Evan Morris et al., Trustees of the Metalline Land Co.,
*v.* Metalline Land Co., Roope Brooking et al.   Roope
Brooking's Appeal.   Wm. H. Stevens's Appeal.   Ap-
peal of Sarah Miller, Exrx. of Frederick Miller.

*Joint stock companies—Articles of association—Forfeiture of stock—As-
sessments—Notice by publication—Laches.*

In order to sustain a forfeiture of property every condition precedent
must be strictly and literally complied with.

The articles of association of an unincorporated company organized
under the joint stock plan, are the law governing the right of forfeiture
of the shares, and all the conditions precedent which are made by them
must be strictly complied with, or the forfeiture will be void.

If the articles of such a company provide for a notice of a call or as-
sessment in newspapers of two cities, and also for notice by mail, a fail-
ure to publish the notice in one of the cities avoids a forfeiture of the stock
for nonpayment of the assessment, even if it appears that the stockholder
whose stock was forfeited received actual notice of the assessment.

Where the articles of association of an unincorporated joint stock com-
pany provide for publication of calls or assessments in the newspapers of
two cities, and also provide that it shall be competent for the company
" after the expiration of thirty days from the period at which any install-
ment shall become due, to forfeit the stock " of members failing to pay
the installment, a failure to advertise the notice in one of the cities will
render a subsequent forfeiture invalid.   In such a case there was no time
at which the shareholder was in default; his ownership of the stock still
continued, and he could never be guilty of laches.

Argued April 8, 1894.   Appeals, Nos. 307, 326 and 368, from
decree of C. P. No. 2, Phila. Co., March T., 1889, No. 86, on
bill in equity.   Before STERRETT, C. J., GREEN, WILLIAMS,
MITCHELL and DEAN, JJ.   Reversed.

Bill in equity by the trustees of the Metalline Land Co. to
determine the parties entitled to participate in the proceeds of
the sale of certain lands of the company.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in overruling exceptions to the mas-
ter's findings that the assessments and forfeitures of the stock
were legal and that appellants were barred by laches, and in
not allowing them to participate in the distribution of the fund.

*Hampton L. Carson*, for Brooking, appellant.—Mr Brooking was entitled to receive notice of a call of an assessment on his stock in strict and exact conformity with the fundamental article of association, and his stock could not be legally forfeited unless he received such notice : Oliver's Est., 136 Pa. 43 ; Henry v. Dietrich, 84 Pa. 293 ; Tomlin v. Tonica & Petersburg R. R., 23 Ill. 429 ; Rutland & B. R. R. v. Thrall, 35 Vt. 536 ; Hughes v. Antietam Mfg. Co., 34 Md. 316 ; Macon & Augusta R. R. v. Vason, 57 Ga. 314 ; Westcott v. Mining Co., 23 Mich. 145 ; Ry. v. Fitler, 60 Pa. 130 ; R. R. v. Romley, 8 Fla. 508 ; Pulford v. Fire Department, 31 Mich. 458 ; Ins. Co. v. Stewart, 39 N. J. L. 486 ; Sparks v. Water Works, 13 Ves. 427 ; Johnson v. Lyttle's Iron Agency, L. R. 5 Ch. Div. 687 ; Watson v. Eales, 23 Beav. 294 ; Clarke v. Hart, 6 H. L. C. 633.

The sending of notice by card was not a compliance with the articles of association as to notice : Land Co. v. Field, L. R. 16 Ch. Div. 647 ; Westcott v. Mining Co., 23 Mich. 145 ; Sparks v. Water Co., 13 Vesey, Jr., 427 ; Cockrell v. Van Diemen's Land, 26 L. J., C. P. 203.

The sale of. the stock was ultra vires : Butterfield v. Beardsley, 28 Mich. 412 ; Oliver's Est., 136 Pa. 43.

Mr. Brooking never had that full knowledge of all the circumstances required by the authorities to work an estoppel, and it would be the height of inequity to present his conduct in the light of an abandonment.   He did not stand by and acquiesce in what had been done, for, when inquiring as to what had been done, he was deceived : 2 Perry on Trusts, 498 ; 3 Lewin on Trusts, 923 ; DeBussche v. Alt, 8 Ch. Div. 286 ; United States v. Taylor, 104 U. S. 222 ; 2 Bouvier's L. Dict. 593 ; 12 A. & E. Ency. L. 587 ; Cook, Stocks, 731 ; 2 Lindley on Partnership, p. 467 ; Barton v. London & N. W. Co., L. R. 24 Q. B. Div. 77 ; Cababeé on Estoppel, 83, 86, 89, 99 ; Butterfield v. Beardsley, 28 Mich. 412 ; Clarke v. Hart, 6 H. L. C. 632 ; Mfg. Co. v. Levy, 54 Pa. 230 ; Westcott v. Mining Co., 23 Mich. 145 ; Mining Co. v. McLister, L. R. 1 Ap. Cas. 39 ; R. R. v. Bowler, 9 Bush, 495 ; Evans v. Smallcombe, L. R. 3 H. L. 249 ; Archbold v. Scully, 9 H. L. C. 360.

There is no.such conduct in the remaining shareholders as to entitle them to consideration, such as was extended in the

English cases cited by the master. They made no large expenditures for the development of the common property.

*T. Elliott Patterson*, for Stevens, appellant.—There was no lawful divestiture of the partnership interest: 3 Kent, 24; Lindley on Partnership, Bl. ed., p. 64; Butterfield v. Beardsley, 28 Mich. 412; Oliver's Est., 136 Pa. 58.

The articles were fundamental and binding upon all interested: Livingston v. Lynch, 4 Johns. Ch. 595; Chapple v. Cadell, Jacob's Ch. 537; Lawes's Case, 10 E. L. & Ch. 168; Const v. Harris, Turner & Russel Ch. 496; Clarke v. Hart, 6 H. L. C. 633; Johnson v. Lyttle's Iron Agency, L. R. 5 Ch. Div. 687; Cook on Joint Stock Companies, 150; Boon on Corporations, 161; Ry. v. Rawley, 8 Fla. 508; Sinking Springs Co. v. Hoff, 2 W. N. 41; Ins. Co. v. Stewart, 39 N. J. L. 486.

Provisions as to forfeiture must be strictly observed: Pierce on Railroads, 86; Redfield on Railways, 214; Morawetz on Private Corporations, 127; Walker v. Ogden, 1 Bissell, 287; Sparks v. Water Works, 13 Vesey, 428; Westcott v. Mining Co., 23 Mich. 145; R. R. v. Graham, 11 Metc. 1; R. R. v. Staples, 5 Gray, 522; R. R. v. Rawley, 8 Fla. 508; Ry. v. Fitler, 60 Pa. 130; Pitcher v. Barrows, 17 Pick. 365; Lincoln v. Wright, 23 Pa. 80; Kellogg v. French, 15 Gray, 357; Beaver v. McGrath, 50 Pa. 482; Hess v. Werts, 4 S. & R. 356.

There were none of the elements of estoppel in Mr. Stevens's case: Pickard v. Sears, 6 A. & E. 469; Freeman v. Cooke, 2 Exch. 654; Keating v. Orne, 77 Pa. 93; Lawrence v. Luhr, 65 Pa. 236; Halleck v. Bresnahen, 3 Wyoming, 73; Carson v. Mining Co., 5 Mich. 288; Mining Co. v. Levy, 54 Pa. 230; Hill v. Epley, 31 Pa. 331; Ashhurst's Ap., 60 Pa. 290; Prendergast v. Turton, 1 Y. & C. 98.

Stevens was not guilty of laches. To constitute an abandonment there must be a voluntary giving up of a thing by one having the intention to abandon it. Intention is the essence of abandonment: Etting v. Marx's Exr., 4 Fed. R. 681; Cranmer v. McSwords, 24 W. Va. 601; Partridge v. McKinney, 10 Cal. 183; Crandall v. Woods, 8 Cal. 144; Shaw v. Spencer, 100 Mass. 382; Rush v. Barr, 1 Watts, 120; 2 Perry on Trusts, 482, 498; Lewin on Trusts, 923.

If purchasers of stock in a corporation have notice that

their vendors are trustees, they will be held as constructive trustees : 1 Perry on Trustees, § 242 ; Shaw v. Spencer, 100 Mass. 390 ; Walsh v. Stille, 2 Pars. Eq. Cas. 17 ; Bayard v. Bank, 52 Pa. 238.

*James E. Hood, Francis I. Gowen* with him, for Sarah Miller, executrix of Frederick Miller, deceased.—The forfeiture of Miller's shares was invalid : Lindley on Partnership, 744 ; Walter v. Haynes, 1 R. & M. 149 ; Clarke v. Hart, 6 H. L. 633.

*Richard C. Dale* and *John G. Johnson, Wm. D. Neilson* with them, for appellees.—This association is a company and not an ordinary partnership : Oliver's Est., 136 Pa. 43.

The defendants whose stocks were not forfeited, being those shown by the records of the association to be members, rest on their apparent title and need offer no further proof.   The other defendants, having no apparent title, seek to obtain the aid of a chancellor to change the existing status and to secure admission to the privileges of membership.   This they seek to accomplish by showing that at one time they were members, and that their loss of membership was accomplished by proceedings in which there was a formal irregularity.

A court of equity will not aid parties to obtain relief who for a period exceeding the statute of limitations have acquiesced in proceedings under which their interests in the Metalline Land Company were forfeited.

Invalid forfeitures may subsequently, by acquiescence, express or tacit, be so far confirmed that they cannot be opened : Green's Brice's Ultra Vires, 188 ; Agriculturist Ins. Co. Cases in Lindley on Part. 760, 763 ; Woolaston's Case, 4 De G. & J. 437 ; Webster's Case, 32 L. J. Ch. 135 ; Knight's Case, L. R. 2 Ch. 321 ; King's Case, L. R. 2 Ch. 714 ; Kelk's Case, L. R. 9 Eq. 107 ; Austin's Case, 24 L. T. 932 ; Lyster's Case, L. R. 4 Eq. 233 ; Mining Co. v. McLister, L. R. 1 Ap. Cas. 39 ; Lawrence's Case, L. R. 2 Ch. Ap. 412 ; Hart v. Clarke, 19 Beav. 356 ; Clegg v. Edmonson, 8 De G. M. & G. 787 ; McConomy v. Reed, 152 Pa. 42.

Opinion by Mr. Justice Green, Oct. 8, 1894 :

The proceeding in this case is a bill in equity filed by certain trustees of a fund arising from the sale of lands owned by

the defendant land company. "The company is unincorpo rated and is a partnership organized on the joint stock plan by a contract entered into by the members:" Oliver's Estate, 136 Pa. 58. It is composed of numerous members whose interests in the company are represented by certificates of stock of which there were to be twenty thousand of five dollars each. The business of the company was to be the purchasing of lands, developing mines of copper and other valuable minerals, and disposing of the same, situated in the Lake Superior Land District, Upper Peninsula, state of Michigan. The funds and property of the association were vested in three trustees to be held by them as joint tenants, and they were to have the entire control and disposal of the property, real and personal, and to make purchases, conveyances, sales and contracts. In the exercise of their authority they sold forty acres of the lands of the company for $500,000, and the distribution of this money is the object of the present proceeding. Certain of the stockholders had failed to pay calls or assessments made by the trustees, and the shares of a number of stockholders, including the appellants, had been forfeited for nonpayment of the calls. If these forfeitures were lawfully made the appellants have no case, and the decree of the court below should be sustained if they or any of them were not lawfully made the appellants are entitled to participate in the distribution, from which they were excluded by the master and court below. Three calls were made prior to the forfeitures involved in the present contention, one in 1872, one in 1874 and another in 1878. As to the call made in 1872 no question arises here, as all the appellants paid the amounts called for at that time. There are three appellants, Roope Brooking, Sarah Miller, executrix, and William H. Stevens. The shares of Brooking and Miller were forfeited under the call of 1878 only. Of the shares of Stevens, five hundred and fifty were forfeited for nonpayment of the call of 1874, and fifteen hundred for nonpayment under the call of 1878. In regard to the forfeiture of the 550 shares under the call of 1874, we are of opinion that the provisions of the articles of association which authorized a forfeiture, were strictly and precisely followed in every particular, and therefore that forfeiture was a valid and binding act fully authorized by the articles, and it must be sustained.

We are of a different opinion in regard to all the forfeitures under the call of 1878 and therefore do not sustain them. The authority to make any forfeitures is found in the fourth section of the articles of association, which is in the following words, viz :

" The original shares of this company shall be issued to the proprietors of the lands in proportion to their respective interests in said lands, liable to no more than five dollars per share assessment, and the board of trustees shall have authority to make a requisition upon their several stockholders for the payment of such installments upon the shares held by them whenever they may deem it necessary or expedient by giving thirty days previous notice of the same in one or more newspapers published in the city of Philadelphia and Detroit, specifying in such notice the amount of such installment per share, and the time and place of payment of the same ; provided however that no installment shall be called in, which, with the amount already paid on the share, shall make the total amount exceed the sum authorized by the articles of this association ; and provided also that notice of the call for any installment shall be sent by letter through the postoffice, addressed to all stockholders whose residence is known to the secretary, and it shall be competent for the trustees after the expiration of thirty days from the period at which any installment shall become due, to forfeit the stock of such parties as may fail in paying such installments and the interest thereon from the time such installment shall have become due, and the stock so forfeited shall be sold at auction in accordance with the general laws of the state of Michigan."

It will be perceived that in order to make a forfeiture which should be in accordance with the power conferred by the foregoing article, it would be necessary for the trustees to make a requisition for the amount called, " by giving notice of the same in one or more newspapers published in the city of Philadelphia and Detroit, specifying in such notice the amount of such installment per share and the time and place of payment of the same." In point of fact such a notice was published in the city of Philadelphia, but no publication of any kind was made in Detroit, and the master has so found, and that it was an irregularity, in fact a non-compliance with the requirements

of the articles of association. It was not only necessary that there should be a publication in a newspaper published in Detroit, but before an act of forfeiture could be performed by the trustees it was essential that thirty days should elapse after the first publication before the installment would become payable. But if there was no publication at all in a Detroit paper then there was no period of thirty days which commenced to run prior to the day of payment, and by necessary consequence no day of payment. Hence the installment was not due at any time and the stockholders were in no default for not paying. Therefore two primary, elemental prerequisites to any right of forfeiture were altogether absent, to wit, first the publication in a Detroit newspaper, and next, the lapsing of an interval of thirty days between the publication of the notice and the day of payment. Both of these requirements were indispensable, but the second of them is so manifestly and so fatally indispensable that the mere statement of the proposition is its own proof. If the thirty days of grace are absent from the case the power to declare the forfeiture never arose, never came into existence, and the subsequent declaration of the forfeiture was simply a void act, altogether nugatory and of no effect whatever.

If authority were wanting for so plain a proposition, a perfect and authoritative illustration is found in the case of The Northampton Mutual Live Stock Ins. Co. v. Stewart, 39 N. J. Law Rep. 486. The company brought an action against a member to recover an assessment. In the court below a judgment was obtained which was reversed by the court of errors and appeals, who said: " The plaintiff is a mutual insurance company. Its scheme of organization draws each holder of its policies into its society as a member thereof. This suit is instituted against the defendant as a member of the corporation; as such he is subject to its constitution and bound by its by-laws and proper corporate regulations, which he is presumed to know and understand. . . . And he is entitled in his relations to the company to whatever aid and protection they provide for him. . . . . How and when the tax is to be levied is provided for in the thirteenth article of the by-laws, as follows: ' If the funds in hand be insufficient to pay all losses, the directors shall, by resolution, levy a tax on the members of the company . . . . on the amount insured, and they shall publish such levying in two

newspapers of the county and all persons insured at the time of such levying of tax shall pay his amount of tax to the treasurer or his order, within sixty days from the day of such public notice.' The fourteenth article provides that if any member neglect or refuse to pay his tax for sixty days from the day public notice shall be given, the company may sue for and recover the same with interest and costs of suit. ·The delinquent must be in default sixty days after publication of the tax levy in two newspapers. . . . There was nothing to show that such publication had ever been made by the company. The demand contains no allegation, and the evidence fails to show that such public notice was given before the suit was brought. The fact, even, that personal notice of the assessment was served by the company upon the defendant is not sufficient answer to his objection." The court said further that it might even be admitted " that personal notice served to apprise him better than public notice would have done, but sixty days of grace were not to be computed from the time when personal notice should be given him, but from the giving of public notice, an event equally within the company's control and adopted in its law."

If all this is true of a mere call to pay in an assessment, which can easily be recovered after another and proper assessment has been made, with how much greater force does it apply when the consequence of non-payment is the forfeiture and absolute loss of an immensely valuable interest, in this case worth, in one instance, $29,000 and upwards, for the failure to pay $86.11.

In the case of Stevens it was undoubtedly the fact that he had no knowledge whatever of the call of 1878 until in 1885, when he wrote to the secretary making inquiry in regard to his stock, and was informed that it had been forfeited for non-payment of the calls of 1878. He and his family lived in Detroit, but he was absent a large part of the time in the Rocky Mountain territories engaged in geological explorations and mining. If the notice had been published in Detroit his family might have seen it and informed him of it. The publication in Philadelphia was obviously of no service, and a publication in Detroit would be of far greater importance to him and his rights than publication anywhere else. But while this consideration affects the merits of his case on the facts, his right to

the Detroit publication is one of the conditions of his contract, and he is therefore entitled to have it rigidly and strictly enforced.

In the case of Germantown Pass. Rwy. v. Fitler, 60 Pa. 130, we said, SHARSWOOD, J.: "We must look to the charter for the power of the directors to forfeit the stock. No doubt the power given must be strictly pursued, and if any restrictions or limitations therein provided have been disregarded, the alleged act of forfeiture must be declared invalid. This is so for the special reason that it is one of those forfeitures against which, if regular, equity does not relieve."

In Westcott v. The Minnesota Mining Co., 23 Mich. 145, Mr. Justice COOLEY, delivering the opinion of the court, said: "Assuming however that the first and second conditions to valid assessment were complied with, it is very clear, we think, that notice of the meetings, as required by the articles, is not shown to have been given. . . . The parties, in associating, clearly had a right to stipulate for any notice they saw fit; and we cannot say that a different one would have been equally effectual, and therefore must be held sufficient. There were reasons which they might have regarded of much force for insisting upon a written notice in every instance, and when proceedings in invitum were taken against them, they were not bound to give heed to any other. . . The right to forfeit shares in any joint stock undertaking must come from the law and can only be exercised in the manner provided by the law. In this case the articles of association were the law governing the right of forfeiture, and all the conditions precedent which were made by them must have been strictly complied with or the proceeding would be void."

In 1 Redfield on Railways, 211 (1887), the author says: "The company, in enforcing the payment of calls by forfeiture of stock, must strictly pursue the mode pointed out in their charter and the general laws of the state. This is a rule of universal application to the subject of forfeiture, and one which the courts will rigidly enforce, and more specially where the forfeiture is one of the prescribed remedies given to the party, and against which equity does not relieve when fairly exercised."

In Tomlin v. Tonica and Petersburg R. R. Co., 23 Ill. 429, the eleventh section of the charter required notices of calls to

be published for thirty days in two newspapers published in the vicinity of the road. An action of assumpsit was brought for unpaid calls and a certificate was filed stating that notice had been duly given by publishing. The court said, CATON, J.: " We are inclined to think that the averments of notice in the first and second counts are insufficient. . . . The eleventh section of the charter positively requires notice of the calls to be published for thirty days in two newspapers published in the vicinity of the road. We are inclined to think that this notice required by the charter could not be dispensed with by giving actual notice to the subscriber." To the same effect is Rutland & B. R. R. Co. v. Thrall, 35 Vermont, 536, in which the court said: " The subscriber, by incorporating this (newspaper notice for 30 days) into his subscription, secures the notice as a condition precedent, without compliance with which he is not liable to suit." In Hughes v. Antietam Mfg. Co., 34 Md. 316, the court said: " The manner of giving notice is prescribed by the law under which the calls were made, and it was the plain duty of the directors to have complied strictly with its requirements in this respect. They had no right to dispense with the mode and manner of notice thus prescribed, and where, by positive law, personal notice is required, a written notice through the mail is not a compliance with the statute." The same doctrine is enforced in Macon & Augusta R. R. Co. v. Vason, 57 Ga. 24 ; Ala. & Florida R. R. Co. v. Rawley, 8 Fla. 508, and Pulford v. Fire Department, 31 Mich. 458, and in many other cases unnecessary to be cited.

The English cases are equally clear and positive to the effect that, in order to sustain a forfeiture of property, every condition precedent must be strictly and literally complied with. In Johnson v. Lyttle's Iron Agency, L. R. 5 Ch. Div. 687, it was said by JAMES, L. J.: " I am of opinion that the notice of December 21st did not comply strictly with the provisions of the contract between the company and the shareholders, which is contained in the regulations of Table A. It is the established rule of the courts of chancery and of the courts of common law that no forfeiture of property can be made unless every condition precedent has been strictly and literally complied with. A very little inaccuracy is as fatal as the greatest. Here the notice is inaccurate. It is therefore bad and the for-

feiture is invalid." MELLISH, L. J., in the same case, said: " I think that if the notice departs in any respect from the statutory form it is impossible for us to go into the question how much it departs. It is a bad notice, and the subsequent resolution, which is founded upon it, is invalid. In this case the notice was inaccurate in demanding the payment of interest from the date of the call." One of the provisions of Table A directed that interest should be due on calls from the date of payment, and for this small variance in the notice it was held that the subsequent resolution of forfeiture of the shares in question was void. Other English cases to the same effect are Sparks v. Liverpool Water Works, 13 Ves. Jr. 427; Watson v. Eales, 23 Beav. 294; Clarke v. Hart, 6 H. L. 633. In the last case Lord CHELMSFORD said : " It is unnecessary to advert to the principle that forfeitures are strictissimi juris, and that parties who seek to enforce them must exactly pursue all that is necessary in order to enable them to exercise this strong power."

It is not necessary to pursue the citations farther. They are really not in controversy. The learned master admitted their correctness and their force. But he was misled into refusing the proper effect of absolute invalidity of the forfeitures declared under the call of 1878, by a theory of acquiescence and of laches on the part of these appellants in seeking to set aside the forfeitures. The cases he cites in support of his conclusions are all well enough in their way, but they are inapplicable to the facts of this case. In Sparks v. The Water Works, 13 Ves. Jr. 428, the calls were made, and the proceeding to forfeit was conducted in strict accordance with the rules of the company, and the forfeiture was sustained upon the insufficiency of the excuse for noncompliance with the call on the part of the delinquent shareholder. In Prendergast v. Turton, 1 Younge & Collier 109, the stock was paid in full, but the original articles of agreement authorized the directors to call for additional shares to carry on the operations of the company. Such a call was made in accordance with the articles, and the plaintiff did not comply but temporized and finally refused to pay. The company being a mining company and requiring contributions from its members to conduct the business, and the other members having constantly paid their contributions,

until the business became profitable, it was inequitable that the plaintiff should stand aloof while others were furnishing the means to proceed with the business, and be permitted to participate in the profits thus earned by means of a restoration to their forfeited shares. Clarke v. Hart, 6 H. L. 649, was an application of the same principle in somewhat different circumstances. It was held that upon all the facts in the case there was an intentional abandonment of the enterprise by the plaintiff, after a full knowledge of the forfeiture and an opportunity to join in the further necessary expenditures to maintain the existence and business of the company.

Rule v. Jewell, L. R. Ch. Div., vol. 18, p. 660, was quite similar in its leading facts, being an absolute refusal to pay not only previous calls, but subsequent necessary contributions to enable the business to be carried on, and the court held that both intentional abandonment, and persistent laches and lying by to take chances, after full notice of forfeiture proceedings, were developed by the testimony, and they refused to restore the forfeited shares.

But there are no such facts in the present case. The Metalline Land Company was not engaged in any mining or manufacturing business, requiring constant contributions from its members to sustain either its existence or its business. The proceedings to forfeit the shares of the appellants were absolutely void for a fatal want of compliance with an essential prerequisite to any forfeiture. There was no lying by for chances while others were keeping the company alive by constant contributions which were essential to that end. There was no intentional abandonment of their interests in the enterprise and no conscious laches, after full knowledge of the forfeiture proceedings. On the contrary there was only an illegal and void forfeiture of their shares set up against their claim to a continued ownership of the shares which were originally their property and which ownership had never been legally divested. This being their legal status, their original ownership continued notwithstanding the declaration of forfeiture. That declaration was founded upon a default of which they had never been guilty. For there never was a time, thirty days after a notice to pay a call published in two newspapers, one in Philadelphia and one in Detroit, at which they could have

paid the sum demanded or any sum. Such a time never arrived because there never was such a publication. Hence they never were in default and there was no power to forfeit their shares, and they remained the owners of their shares as fully and as lawfully, in all respects, after the declaration of forfeiture as before. They were not bound to take any notice of it or to seek to have it set aside. They already held their shares and they continued to hold them and to be capable of asserting their ownership in any circumstances and for any purpose. They are not the actors in the present proceeding. They were the original owners of the shares in question, and if any other persons assert such ownership they must show it affirmatively and obtain a judicial decree to that effect. This they cannot do by setting up a void declaration of forfeiture.

There is much discussion of other matters in the paper-books but we do not deem its consideration essential in consequence of our views upon the leading subject which lies at the foundation of the entire contention. We are of opinion that the appellants are entitled to participation in the distribution to the extent of the shares held by them at the time of the call of 1878, and to that extent the decree of the learned court below must be reversed.

The decree of the court below is reversed at the cost of the appellees and the record is remitted with instructions to distribute the fund in the hands of the trustees in accordance with this opinion.