Pennsylvania Company etc., Trustee, *v.* Forrest Hill Building & Loan Association, Appellant.

466

Argued October 13, 1936.

Before KELLER,
P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER,
JAMES and RHODES, JJ.

*Norman J. Griffin,* for appellant.

*Dewey Hoffman,* with him *John J. Elcock,* for appellee.

OPINION BY KELLER, P. J., February 26, 1937:

Forrest Hill Building & Loan Association became the registered owner of real estate No. 607 Brinton Street, Philadelphia, on March 15, 1932, and remained so until February 5, 1934, when the property was sold at sheriff's sale. As registered owner it became liable for the city, school and poor taxes for the years 1933 and 1934. *Penna. Co. etc. v. Bergson,* 307 Pa. 44, 159 A. 32.

The plaintiff was the owner of a first mortgage on this property, which had been given by a prior owner, and subject to which the defendant acquired title to the premises.

Following certain defaults by defendant, the plaintiff entered judgment on the bond accompanying the mortgage and issued execution (*Keene Home v. Startzell*, 235 Pa. 110, 83 A. 584; Act of May 6, 1929, P. L. 1557). The premises were sold to the plaintiff by the sheriff on February 5, 1934, for an amount insufficient to pay any part of said taxes, which, therefore, remained a lien on the real estate in the hands of the purchaser.

Thereafter, on March 25, 1934, the plaintiff in order to protect its interest in said premises paid the taxes assessed against the defendant for the years 1933 and 1934, amounting to $241.91, and on refusal of defendant to reimburse it for the same brought this action in assumpsit.

The defendant did not dispute its liability to pay the taxes paid by plaintiff. Under the decision in *Penna. Co. v. Bergson,* supra, it could not. But it denied that plaintiff was entitled to reimbursement for their payment, because of the following averments, set up by way of new matter, in its affidavit of defense:

That at a meeting of defendant's stockholders held January 8, 1934, it was voted to go into voluntary liquidation, and Eugene Wormer, William J. Magee and Norman J. Griffin were elected liquidating trustees. This action was submitted to and approved by the Secretary of Banking of the Commonwealth on January 24, 1934 and recorded in Miscellaneous Corporation Record Book 196, p. 229. That pursuant to the provisions of the Act of May 5, 1933, P. L. 457, sec. 1106, p. 523, the trustees published a notice, once a week for three weeks, beginning February 10, 1934, in a newspaper of general circulation and in the Legal Intelligencer setting forth, inter alia, that the defendant association was being

liquidated pursuant to a plan of voluntary liquidation, and that any creditor other than a shareholder must present his claim, under oath or affirmation, within three months, to wit, on or before May 10, 1934, or else be barred from claiming an amount exceeding the amount shown to be due him on the books or other records of the association, and that he must present his claim, under oath or affirmation, within six months from such date, to wit, on or before August 10, 1934, or else be forever barred from sharing in the distribution of the assets of the association. It was averred that the plaintiff did not appear upon the books of the said association as a creditor. Nothing was said as respects "other records of the association," and it was not averred that the plaintiff was not "otherwise known to the liquidating trustees" to be a creditor of the association,[1] or that they had sent the notice prescribed by the act to the plaintiff's address; or that after the expiration of three months, they had sent notice by registered mail to the plaintiff as required by section 1106 C.

It was further averred that the plaintiff had not presented its claim against defendant to the liquidating trustees by August 10, 1934, the six months' period fixed in the advertisement of notice, and by reason thereof, in accordance with section 1107(4) of the Act of May 5, 1933, P. L. 457, the liquidating trustees had refused to allow the claim.

To these averments by way of new matter, the plaintiff made reply that the defendant had record of the fact and knew that the plaintiff was the owner of the first mortgage of $3500 covering the premises 607 Brinton

---

[1] "Sec. 1106. *Notice to creditors and shareholders—A— ......* the liquidating ...... trustees ...... shall forthwith give notice to all corporations or persons who appear upon the books or other records of the association as, or *who are otherwise known to the liquidating ...... trustees to be, creditors* or shareholders of the association," etc.

Street, during the time defendant association held title
to said premises; that the defendant had paid plaintiff
the semi-annual interest on said mortgage due February
8, 1932, August 8, 1932 and February 8, 1933, respec-
tively, all of which appeared on the books of the associa-
tion; that the plaintiff's claim for reimbursement of
taxes due the City of Philadelphia et al., had not arisen
on February 10, 1934, when the liquidating trustees ad-
vertised the notice for the presentation of claims, and
did not arise until March 25, 1934; that it was not nec-
essary, as matter of law, for plaintiff to present its
claim by August 10, 1934; and that the liquidating
trustees had not themselves complied with clause A of
section 1106 of the Act of May 5, 1933, supra, in that
they had not given notice as required by law to "all cor-
porations or persons who appear upon the books or
other records of the association as, or who are other-
wise known to the liquidating trustee or trustees to be,
creditors or shareholders of the association."

The case came on for trial before Judge GLASS, with-
out a jury. The only evidence produced consisted of
offers of admitted or undenied paragraphs of the plead-
ings, together with letters from plaintiff's attorney to
the defendant association, Michael P. Murray, Secretary,
dated January 2, 1934,—informing it that judgment
had been entered on the bond accompanying the mort-
gage and that execution would follow—, and June 1,
1934, June 18, 1934, and August 9, 1934, notifying de-
fendant that plaintiff had become the purchaser of prem-
ises No. 607 Brinton Street, and on March 25, 1934 had
paid the taxes for 1933 and 1934, in question, and de-
manding reimbursement, and, in the last letter advising
it of his intention to bring suit for the same unless paid;
also a letter from Norman J. Griffin, one of the liquidat-
ing trustees, and their attorney, addressed to plaintiff's
attorney, dated September 25, 1934, in reply to a letter
of September 24, 1934, refusing to allow or certify the

plaintiff's claim for reimbursement of these taxes, because not presented by August 10, 1934. The defendant produced no evidence tending to show that the plaintiff was not known to the liquidating trustees to be a creditor of the association apart from the books or other records of the association.

The trial judge found, in substance, that the liquidating trustees must have known from the books and records of the association that it was indebted to the City and School District•of Philadelphia for the taxes on 607 Brinton Street for the years 1933 and 1934, and as such creditors they had the right to enforce their claims by actions in assumpsit, and that the mortgagee purchaser at sheriff's sale, on paying these tax claims, would be subrogated to the rights of the city and school district and become entitled, as a creditor, to enforce its right of recoupment from the association by an action in assumpsit; that it was the duty of the liquidating trustees to give the city and school district,—and the plaintiff, as successor to their claims as creditors—direct and personal or individual notice, and subsequently, notice by registered mail, pursuant to the directions of section 1106 A and C of the Act of May 5, 1933, supra; and that the trustees had not shown that they had complied with these mandatory provisions. He, accordingly, found in favor of the plaintiff for the amount paid for taxes with interest, a total of $267.38. The court in banc refused defendant's motions, (1) for a new trial on the usual stereotyped grounds, and (2) for judgment non obstante veredicto, and judgment was entered on the trial judge's findings. Defendant appealed.

The evidence in the case, in our opinion, justifies the inference of fact made by the learned trial judge in his finding. Nothing in the record before us would support a finding that the liquidating trustees did not know that the City and School District of Philadelphia were creditors of the association for the unpaid taxes on 607

Brinton Street for the years 1933 and 1934; and it is not to be believed that, being in charge of the affairs of the association, at least since February 10, 1934, they did not receive, or at least have knowledge of, the plaintiff's letters to the association of June 1, 1934, June 18, 1934 and August 9, 1934, making demand for reimbursement of these taxes paid by it to the city and school district, for which the association was primarily liable. The trustees did not disclaim or deny such knowledge either in their affidavit of defense or by testimony on the trial. But they neither averred nor proved compliance by them with the requirements of the Act of 1933, supra, sec. 1106 A and C, by giving direct and personal or individual notice, or notice by registered mail, to either the city and school district or the plaintiff, who succeeded to their rights as a creditor and stood in their place. Public advertisement, as required by section 1106 B did not relieve them of the duty of giving direct and personal or individual notice to all creditors of the association known by them to be such from the books or records of the association, or *otherwise* (sec. 1106 A). If the giving of notice is relied upon to sustain a forfeiture or divestiture of one's rights, directions as to how such notice shall be given must be strictly complied with: *Morris v. Trustees Metalline Land Co., Brooking's Appeal,* 164 Pa. 326, 30 A. 240, *Morris v. Trustees Metalline Land Co., Hoopes's Appeal,* 166 Pa. 351, 31 A. 114. As the trustees did not strictly comply with the requirements of the act by giving direct and personal or individual notice and notice by registered mail to the city and school district, nor to the plaintiff, who succeeded to their rights of action by subrogation, their claims as creditors of the association were not affected by the advertisement of public notice nor barred from allowance by their failure to present them to the liquidating trustees by August 10, 1934. The purpose of advertising in the newspaper of

general circulation and in the legal newspaper is to give notice to creditors of the association whose names do not appear on its books or in its records or *who are not known* to the liquidating trustees to be creditors. Where a person or corporation appears as a creditor on the books or records of the association, or the liquidating trustees *otherwise* know that he or it is a creditor of the association, the trustees must not only advertise but give the direct and personal or individual notice required by section 1106 A and C in order to justify their refusal to allow the claim because of a failure to present it within six months.

Apart from, or in addition to this, we are of opinion that the appellant has misunderstood and misconstrued the legal effect of the provisions of sections 1106 and 1107 of the Act of May 5, 1933, supra, upon which it relies.

These sections are part of Article XI, relating to the Voluntary Dissolution of Associations, and they set forth the duties of liquidating trustees in voluntary liquidation proceedings. If the trustees strictly observe the requirements of the article as to giving notice, and perform the other duties laid upon them in accordance with the directions of the statute, they are protected in their distribution of the funds of the association in their possession, when approved by the Secretary of Banking, or made pursuant to the decree of the court, if an account is filed in court. But there is not one word in Article XI of the Act of 1933, supra, which provides, or can be construed as a definite declaration or enactment, that a creditor of the association shall be deprived of his right of action on a valid claim against it, or limited to six months within which he *may bring suit and recover judgment,* because of his failure to present his claim to the trustees within that period. Section 1106 provides that the liquidating trustees shall give personal notice, and notice by registered mail, to credi-

tors of the association of whom they have knowledge, either from the books and records of the association or otherwise, and prescribes the form of notice they shall give, and further provides that notice in that form shall be given creditors, of whom they have no knowledge as above, by public advertisment; but it contains no specific provision that puts that notice into effect or bars creditors from bringing action on their claims unless presented to and allowed by the trustees within the period fixed in the advertisement. Section 1107 sets forth what claims the *liquidating trustees* shall not *allow,* and provides, *inter alia,* that they shall not allow the claim of any creditor who does not appear on the books or records of the association unless he has presented a claim duly verified within six months after the date of the first publication of the advertisement abovementioned; but it contains no provision affecting the creditor's right of action against the defendant or limiting the time within which he may bring it. The section is confined to action by the trustees in allowing or disallowing a claim, Section 1111 directs that the liquidating trustees shall not distribute any of the assets of the association in the form of dividends to shareholders without the prior written approval of the Department of Banking of the Commonwealth. Section 1112—as amended by Act of July 2, 1935, P. L. 574—prescribes the order of perference to be followed by the liquidating trustees in distributing the assets of the association in liquidation, and gives claims of creditors, other than shareholders, preference over claims arising from the ownership of shares. But these sections do not deprive the courts of supervision over the accounts and distribution of the liquidating trustees, where necessary to prevent injustice, or make the acts and conduct of the trustees final and not subject to review by the courts, if proper occasion arises; nor do they affect the legal rights

of creditors to go into court to enforce their claims and secure judgment upon them.

That those who framed this act knew how to draw a clause or provision in a statute expressing definitely the effect which defendant seeks to ascribe to sections 1106 and 1107, is seen by a reference to the Department of Banking Code of May 15, 1933, P. L. 565, Article X of which relates to Proof of Claims, accounting and distribution of funds of institutions under the supervision of the Department of Banking—including building and loan associations—, which have been taken possession of by the Secretary of Banking as receiver. Section 1003, which relates to Proof of Claim of Creditors, provides in Clause A (italics supplied) : *"Creditors* ...... in the case of a building and loan association, other than shareholders, *shall not share* in any distribution of the assets of the institution, unless the creditor ...... shall, within the time specified by the secretary, pursuant to the provisions of this act, present to the secretary a statement of his claim", etc. No such clear and definite expression appears in the statute now being considered. Moreover the above quotation from section 1003 of the Department of Banking Code is immediately followed by, "However, the court may, upon petition and adequate cause shown, permit any creditor to file his claim upon a later date" etc., and it is proper to note, in this connection, that by the next section, 1004, the *allowance* of the claims of creditors by the *Secretary of Banking* is limited to such as are *"presented within the time and in the manner provided by this act."*

It is not conceivable that the legislature, which considered and passed upon these two bills at practically the same time, and made this vital difference in their provisions, did not do so understandingly, or that they intended, by a clause which directs only the *form of notice* to be given to creditors by liquidating trustees and provides what claims shall not be *allowed by the trus-*

*tees,* to prevent, by implication, a creditor with a valid claim from going into court to establish it, or to make the trustees the final arbiters over the distribution of the assets of the association. Apart from the effect, which is sought to be *implied* from the form of notice which the liquidating trustees are directed to give creditors and shareholders, and the prohibition on their allowance of certain claims on distribution, when made without an order or decree of court, there is no declaration or enactment in the statute which denies a creditor the right to secure judgment on a valid claim against the association or bars the court supervising distribution from allowing it to share in the funds of the association not distributed, if justice and equity require it.

Certainly, if a creditor, by neglect, does not present his claim until after funds have been distributed by the liquidating trustees in strict compliance with sections 1106 and 1107 of the act, he can have no claim against the association or the trustee as respects the funds so distributed; but that is a different thing from denying him, by mere implication, the right to secure judgment on a valid claim, and of sharing in funds not distributed, where a court deems the failure to give notice of his claim is reasonably explained and accounted for.

For other examples of statutes which contain provisions clearly and definitely affecting the right of the creditor to share in the distribution of the funds of a debtor or limiting the time for their presentation and recovery, see Act of June 4, 1901, P. L. 404, relating to insolvency, sec. 23, in connection with sections 22, 24, 25 and 26; the United States Bankruptcy Act (Act of Congress of July 1, 1898, c. 541, secs. 57 and 63, 30 Stat. 560, 562), United States Judicial Code, Title 11, secs. 93(n) and 103(b); Act of June 15, 1923, P. L. 809, as amended May 5, 1927, P. L. 762, sec. 47, p. 771 (No. 90 *B. & L. Assn. v. Allesandroni,* 317 Pa. 30, 176 A. 235); Act of June 7, 1917, P. L. 447, sec. 15(a), p. 476, and

sec. 49(b), p. 515. With reference to the last mentioned statute, we held in *Windber Trust Co. v. Wick,* 118 Pa. Superior Ct. 578, 179 A. 927, that the limitation in section 15(a), as respects the lien of a debt upon the real estate of a decedent, did not affect the creditor's right to sue in assumpsit and get a judgment. It affected only the estate or property to which he might look to satisfy it. See also *Glass's Est.,* 115 Pa. Superior Ct. 448, 175 A. 736; *Foust, Admr. v. Munson Steamship Lines,* 299 U. S. 77.

We are therefore of opinion, (1) that the court below correctly ruled that the defendant had not shown on the trial that the liquidating trustees had strictly complied with the requirements of section 1106 of the Act of May 5, 1933, by giving notice as prescribed therein to the plaintiff who, they must have known, was a creditor of the association for the taxes for the years 1933 and 1934, paid the city and school district on March 25, 1934, and (2) that sections 1106 and 1107 of that act do not amount to a clear and definite declaration or enactment that a creditor, by failing to file his claim with the liquidating trustees within six months from the date of their public advertisement of notice, is debarred from bringing his action at law and securing a judgment, if entitled thereto. Whether, having secured such a judgment, he is entitled to share in the assets of the association may be a matter for subsequent determination by a court having jurisdiction of the subject.

The judgment is affirmed; but the court below will so control the judgment and execution that no preference is acquired by plaintiff over other general creditors of the association, as distinguished from claims of shareholders arising from their ownership of shares.[2] It is so ordered.

_____

[2] See sec. 1112 of Act of May 5, 1933, as amended by Act of July 2, 1935, P. L. 574, p. 588; *Malis v. Homer B. & L. Assn.,* 314 Pa. 321, 323, 171 A. 570.