## SMITH *v.* STINSON

[No. 315, September Term, 1966.]

*Decided May 3, 1967.*

538

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, McWILLIAMS and FINAN, JJ.

*Henry E. Noyes* for appellant.

No brief and no appearance for the appellee.

HAMMOND, C. J., delivered the opinion of the Court.

To grossly exaggerate the wrongs, real or imaginary, inflicted by life, has been a preoccupation of mankind, as various writers have pointed out. One tends, said Gabriel Harvey, "to make huge mountains of small molehills." Phineas Fletcher mused that "she takes me for a mountain that am but a molehill." Said Richard Brome: "Those people are forever swelling molehills to mountains," and John Rhode (Cecil John Charles Street) noted in his book "Dead in the Night," 1942, that "life is a great one for turning molehills into mountains, as the proverb has it."

The appellant Smith, in his brief and oral argument, has enthusiastically embraced this philosophy in attacking a judgment on a jury's verdict for $1,054.50, the amount sued for by a contractor, Stinson, against the owner of a house who employed the contractor to replace or repair parts of the house which had been damaged by fire but did not pay the agreed price for labor and materials. Smith argued that his motion for a directed verdict at the close of the plaintiff's case (no evidence was offered by Smith) should have been granted, that he was "denied a fair and impartial trial by the conduct of the court," that he should have been allowed to testify on cross-examination by his counsel (at the close of his testimony as an adverse witness for the contractor) as to defective workmanship and that the court's instructions to the jury were tantamount to a directed verdict for the contractor. The contentions, singly and cumulatively, were made to sound like mountains of error; when examined closely they are but molehills and non-prejudicial molehills at that.

In early 1959 a residence in Takoma Park owned but not lived in by Smith was damaged by fire. The insurance adjuster

met with Smith and Stinson, who had made a written estimate of the cost of the necessary repairs. Smith was told by the adjuster that some of the cost of the repairs must be attributed to damage from obsolescence and wear and not to the fire. Smith considered the matter and at a later meeting in writing accepted the repairs listed and the prices estimated in the proposal which had been signed by Stinson, and authorized Stinson to proceed. The work was done but never paid for. Stinson brought suit against Smith in 1962 but was unable to procure service and it was not until 1965, after an attachment was laid on the property, that Smith was brought to trial. The declaration was on the common counts and on a special count, detailing the written agreement "which is attached hereto * * *" and a statement of account showing $1,054.50 to be due and unpaid—the estimated price of $1,415 with authorized extras of $65.00, or a total of $1,480, less credits for work done and material furnished by Smith in a total amount of $425.50.

At the trial Stinson offered his own testimony and that of the insurance adjuster that Smith had in writing accepted Stinson's offer in the proposal sued on in the special count and authorized the work specified therein to be done, that all the work specified was done except the electrical work which Smith decided to do himself, that all the work was done in a workmanlike manner and approved by the Montgomery County building inspector as in conformity with the County Building Code, that $1,480 was the final contract price, that the credits totaled $425.50 and the amount sued for was $1,054.50, which was a fair and reasonable price for the work done. Smith, called as an adverse witness, admitted that he had signed the estimate and authorized the work to be done. He suggested from the stand first, that the insurance company was responsible for Stinson's bill since his policy coverage was large enough to cover it and second, that he "never got paid for the full amount of the loss" (although he admitted the insurance company paid him for the fire loss).

Smith's argument that he was entitled to a directed verdict is that Stinson sued on a special contract which was unperformed in full and therefore could not recover for partial performance under the common counts. A special written contract

was proved but the writing was not admitted into evidence because a photostatic copy was offered (Smith's counsel proffered the original from the trial table but for some reason neither Stinson nor the court accepted it). Since there was evidence of a special contract and testimony by Stinson that it had been fully performed, it was proper to submit the case to the jury. It is common and accepted practice for a declaration in assumpsit to include the common counts when there is a count on a special contract and it is well settled that, even if there is a special contract, the plaintiff may declare and recover on the common counts, if he has performed in full, the contract price being the controlling measure of damages. 1 Poe, *Pleading* (Tiffany ed.), § 101; *Bright v. Ganas,* 171 Md. 493, 497; *Cline v. Fountain Rock Co., Inc.,* 210 Md. 78, 90; *Duck v. Quality Custom Homes, Inc.,* 242 Md. 609, 613; *cf. Mangione v. Braverman,* 234 Md. 357, 360-61.

The contention that there had not been a fair and impartial trial is made because (a) Judge Moorman (it may be inferred from, although it does not specifically appear in, the record) suggested at a bench conference that Stinson's counsel call Smith and the insurance adjuster as witnesses; and (b) Judge Moorman questioned Stinson to elicit from him reiterative testimony that the work had been done and that the price was fair and reasonable. We see nothing prejudicially improper in these actions. The jury did not know what had been suggested at the bench and Stinson's pertinent answers to the judge's questions were only restatements of what he had already said from the stand. To the extent that the judge's questions elicited answers as to the fairness and reasonableness of the cost of the work Stinson had done, they met a burden greater than Stinson bore in view of the testimony as to the special contract and its full performance. Lest there be any inference of partiality drawn by the jury from his rulings in the trial Judge Moorman instructed the jury:

"You are not to concern yourselves with the reasons for my rulings, but neither by my rulings in this case on the evidence or by these instructions have I, or do I, intend to reflect an opinion in relation to the facts in the case. And if by any ruling or by my tone of

voice or demeanor or gesture I have made, you have received the idea I have an opinion of fact, you are totally to disregard that."

Despite Smith's attempt to claim that Stinson's contract had not been with him but with the insurance company, he asserted in brief and argument that he had been deprived of his real defense when Judge Moorman refused to allow his counsel to use the leading questions of cross-examination (after Smith had testified for Stinson as an adverse witness) to bring out his claim of defective and inadequate workmanship. Judge Moorman's ruling was that the cross-examination was not within the scope of the direct examination and therefore if Smith were to testify to unsatisfactory work, he would have to do so later on direct examination. We see no error or abuse of judicial discretion in Judge Moorman's ruling. If Smith did at that time, he did not choose to rectify it by availing himself of the opportunity of offering testimony in his behalf on the point.

Smith claims that the instructions to the jury were defective because the court would not charge that Stinson was bound by Smith's general statement as an adverse witness that some of the repairs were "unsatisfactory." Smith did not show with any specificity what was defective or the monetary measure of any defect. Further, the requested instruction was too broad. Stinson was bound only by that part of Smith's testimony which was not controverted by other evidence, *Proctor Elec. Co. v. Zink,* 217 Md. 22, and the claim of unsatisfactory work had been controverted.

A further challenge to the instructions is that they were unjustifiably equivalent to a directed verdict for the plaintiff. There was no instruction that there was any issue as to whether the insurance company or Smith had employed Stinson and Smith did not object to the charge on this point or request such an instruction. The issues put to the jury were whether Smith had received and accepted from Stinson labor and materials that were beneficial to him. Judge Moorman charged the jury that if they found for Stinson on those issues, their verdict must be for him for $1054.50.

The uncontroverted evidence in the case supported the charge

on those issues. If, under the circumstances, that charge amounted to a directed verdict for the plaintiff, the defendant has only himself to blame for not offering evidence to controvert that tendered in support of the plaintiff's claim and referred to by the court. We find no merit in any of Smith's contentions.

*Judgment affirmed, with costs.*