CHARLES G. HILL *vs.* EDWARD L. KAUFMAN el al.

*Mechanics Liens—Notice of Claim to Owner of Building—Posting of Notice on Premises Not Sufficient When Personal Service Could be Had—Materials Supplied Under a Continuous Contract.*

The lien claimant in this case agreed to supply a builder with all the paint and glass to be used in the construction of a certain dwelling house. The first delivery of materials was made on May 18th and the last deliveries were made on August 30th, September 4th, 8th and 20th of the same year. *Held*, upon the evidence in the case, that the last deliveries were not made under a separate purchase by the builder but that all the materials were furnished under an entire and continuous contract.

A lien claimant, whose last delivery of material to the builder was on September 20th, endeavored on October 28th to serve on the owner of the house a notice of his intention to claim a lien. The claimant and his attorney went twice on that day to the owner's office in Baltimore City where they were told that he was temporarily out, and then went to his residence in Baltimore County, near the building in question and were there erroneously informed that the owner was beyond the State. Without making any further effort to effect a personal service, the claimant posted the notice of his lien on the door of the building. The defendant's evidence showed that he was at his office and residence at different times on that day as well as before and afterwards and that other lien claimants had then served personal notices on him. Under Code, Art. 63, secs. 11, 12, when a lien is claimed for materials used in the erection of a building, furnished under a contract not with the owner but with a builder, then the claimant must give to the owner a notice in writing of his intention to claim a lien within sixty days from the date of furnising the materials. If such notice cannot be given personally to the owner on account of absence or other cause, the claimant is authorized to place the notice on the building. *Held*, that on October 28th the lien claimant had twenty additional days in which to serve notice on the owner, and the evidence shows that he did not use such reasonable diligence to make personal service as authorized him to resort to the alternative method of service by setting up the notice on the premises.

Appeal from the Circuit Court for Baltimore County (Fow-LER, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, and SCHMUCKER, JJ.

*C. Dodd McFarland* and *Harry M. Hutton*, for the appellant.

*John P. O'Ferrall*, for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

The decree appealed from in this case establishes the validity of a mechanic's lien claimed by the appellees upon a dwelling on Wiley avenue in Baltimore County, owned by the appellant. The lien is claimed for materials sold and delivered on the premises to a builder named Eckstine who erected the dwelling upon the appellant's land under a contract with him. The bill of complaint was filed by other lien claimants to procure a sale of the dwelling for the payment of their liens upon it, and the appellees were made parties to the case by an order of Court passed *pendente lite*. The appellant purchased and took assignments of all of the lien claims except that of the appellees which he resisted upon the ground that there had been no service upon him as owner of the property of the notice required by sec. 11 of Art. 63 of the Code. The appellees, after once calling at the appellant's office and residence and not finding him at either place, had on the same day without making any further effort to find him, set up the notice on the premises by nailing it to the door of the house. The vital question presented by the record is whether the setting up the notice on the premises constituted under the circumstances of this case, a sufficient compliance with the requirements of sec. 11 of Art. 63 of the Code.

The appellees, who are dealers in glass, paints, oils, &c., sold to Eckstine the entire supply of such materials used in the erection of the dwelling. These materials were delivered by the appellees to Eckstine at the building from time to time as requested by him during its erection. The first delivery was made on May 18th, 1899, and the last four deliveries were respectively made on August 30th, September 4th, 8th, and 20th, of the same year. The notice was set up on the premises on October 28th, 1899.

The appellees contend that the materials were sold under two contracts and that the delivery made on August 30th, was the last delivery under the first sale, while the appellants insist that all of the materials were sold under one continuous contract although delivered from time to time as requested by Eckstine down to September 20th. If the contention of the appellees be correct, the 28th of October on which they failed to find the appellant at his office or residence, was the last one of the sixty days allowed by the Code for serving the notice on the owner of the premises, and if they had not set up the notice on the premises on that day they would have lost their lien. On the other hand, if the contention of the appellant that all of the materials were sold under one contract be correct the appellees on failing to find the appellant on October 28th, would have had twenty days more in which to have made further efforts to serve the notice on him personally.

It therefore becomes necessary to examine with care the evidence in the record touching the nature of the sale of the materials by the appellees to the appellant. The only oral testimony bearing upon the subject is that of John H. Boland, one of the appellees. He testified that "Eckstine came to our office and informed us he was building this cottage and wanted us to furnish the material he might use in its construction, explained its location and for whom he was building it and stating it was a contract job." "We agreed to furnish him whatever goods he might require at whatever the ruling market prices would be." That the witness personally had the conversation with Eckstine and that in pursuance of the agreement thus made his firm furnished to Eckstine the materials charged for in their mechanics' lien claim, amounting to $731.32, that all of the items charged thereon were delivered at the dwelling in question from time to time as ordered by Eckstine either personally or through his brother. The usual shipping tickets, receipted by Eckstine or his brother and in one instance by his foreman, for all of the items charged in the lien claim including those of September 4th, 8th and 20th were produced and put in evidence by the witness.

Upon cross-examination this witness said that his firm had also in a written letter to Eckstine agreed to furnish him all of the material in their line he might want for the erection of the Dr. Hill cottage specifying the price per square foot of the' glass and agreeing to furnish the other articles at market prices and that Eckstine in response "stated we could go ahead and furnish him whatever he may want for the cottage. This was on May 18th, 1899, he made the arrangement with me." The witness further testified that he did not retain a copy of the letter to Eckstine, but he produced the estimate book of his firm upon which appeared as of May 18th, 1899, memoranda of an estimate for materials to be furnished Eckstine for "Dr. Hill's house."

The only evidence tending to show that the materials delivered on the three days in September 1899, constituted a separate purchase by Eckstine were the statements by the appellee Boland, in other portions of his testimony that they "were purchased after the time limit, were for extra work and breakage" and that "Eckstine at the time he ordered these goods asked us to keep a separate account as the same were to be charged to some material man who had broken this glass after it had been glazed." But Boland's own counsel, upon his re-examination in chief, called his attention to the fact that he, after having testified that he had given the estimate to Eckstine at his request for all the material he might require for the Hill cottage, had several times in his subsequent answers used the word purchased and the counsel then asked him to "state in detail what purchases were made by Mr. Eckstine for the Hill cottage other than that embraced in the estimate of May 18th, 1899." To this question then put to him, Boland replied "By the word purchased I meant that he ordered goods to their respective places to' apply on his purchase of May 18th, 1899."

It is thus apparent from Boland's own testimony as finally explained by himself that the contract of May 18th, 1899, between the appellees and Eckstine for materials for the Hill cottage was intended by the parties to it to be an entire and

continuous one and to embrace within its operation all of the materials furnished by them to him in that connection. The appellees therefore on the 28th of October when they set up the notice on the premises had twenty days more in which they might have made further efforts to serve it on him personally.

The appellee, Boland, and his then attorney, George G. Hooper, both testified that on the morning of October 28th, 1899, they went together to Dr. Hill's office in Baltimore City for the purpose of serving the notice on him and he was not in at that time, but they were told that he might return in the afternoon. They went up again to his office in the afternoon and not finding him there they went to his residence on Wiley avenue, about one hundred yards from the cottage on which the lien was claimed, and asked if he was at home. The colored woman who came to the door told them the doctor had gone fox hunting. Mr. Hooper knowing that the doctor had come from North Carolina asked the woman if he had gone to that State and she replied in the affirmative saying at the same time that no other person than herself was in the house.

Boland and Mr. Hooper his attorney thereupon, without making any further efforts to serve the notice on Dr. Hill, went at once to the new building near by, which they found vacant with several men at work on it and fastened the notice on the front door. The only reason assigned by these two witnesses for thus posting the notice was that Mr. Boland thought that the 28th of October was practically his last day to give the notice, as it was the 59th day after the delivery of materials made on August 30th, and he desired to have no contention about the matter.

Dr. Hill testified that no notice of lien was ever served upon him or seen by him and that he had no knowledge of one ever having been fastened to the door of the cottage. He further testified that he had not been to North Carolina for a number of years past, and that if any statement to the contrary had been made at his house it was made without his

knowledge or authority.   He also testified that it was possible that he had gone fox hunting a few miles from home on October 28th, but he had been at his residence on that morning until ten or eleven o'clock and had returned to dinner at seven or eight in the evening and that his visiting list contained entries showing that he had made professional calls during the day and that the prescription book at Mount Hope Hospital of which he was physician showed that he had made his usual visit there.   It is admitted in the record that similar notices of lien claims against his cottage had been served on Dr. Hill personally by other material men on the following dates, to wit : by Wm. C. Sherer, on September 19th, 1899: by F. O. Singer & Co., on October 24th, 1899; by Natl. Mantel & Tile Co., on October 26th, 1899; by Myohl & Luken, on October 28th, 1899; (the very day on which the appellees set up their notice) and by H. N. Eckstine on October 30th, 1899.

The testimony thus appearing in the record shows in our opinion that the appellees did not use such reasonable diligence in their effort to serve their notice on the appellant personally as to justify the resort which was had by them to the alternative method of service by setting it up on the premises. The obvious purpose of the Code in requiring dealers who sell materials to contractors or builders, to give to the owner of the property notice of their intention to claim the lien is to enable the owner to protect himself by exercising his statutory privilege of retaining from the cost of the building the amount due the lien claimant.   The obligation upon the material man to give the notice in such cases is imperative and the intention of the law is that it shall be personally served upon the owner whenever that can be done.   *Kenly* v. *Sisters of Charity,* 63 Md. 306; *Hensel* v. *Johnson,* 94 Md. 735.

In *Kenly* v. *Sisters of Charity, supra,* our predecessors say upon this subject: "It was the primary object in Art. 63, secs. 11 and 12, that the notice should be served on the owner personally and the notice on the building was only allowable when the personal service could not be given.   The claimant was

not allowed his option to serve the notice on the owner or stick it on the building. He is only allowed to do the latter when he could not do the former.   *   *   *   The secondary mode of giving notice by placing it on the building can only be resorted to when it is shown that the primary method pointed out of giving notice personally is impracticable."

Recognizing our duty to give to the provisions of the Code relating to mechanics liens that liberal construction to which laws conferring general jurisdiction and remedial in their nature are entitled, we cannot ignore the fact that its provisions authorize the setting up of the notice on the premises only when personal notice "cannot be given on account of absence or other causes." We think the appellees by the exercise of ordinary negligence might easily, within the sixty days allowed them by the law, have made personal service of their notice upon the appellant who resided within a hundred yards of the cottage to which they supplied the materials and who was daily at fixed hours in his office in Baltimore City where they carried on business.

In the argument of the case it was contended by the appellee's counsel that the appellant was not a resident of Baltimore County and that for that reason they were under sec. 11 of Art. 63 not required to give him notice but we think the evidence although not as full as it might have been establishes the fact that he did reside there.

> *The decree appealed from must be reversed. Decree reversed with costs.*