## PALMER PARK LIMITED PARTNERSHIP
## *v.* MARVELITE, INC.

[No. 400, September Term, 1968.]

*Decided October 8, 1969.*

The cause was heard before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*Benjamin B. Brown* for appellant.

*Shale D. Stiller,* with whom were *Frank, Bernstein, Conaway & Goldman* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

In this appeal the owner of an apartment house complex (appellant) seeks to overturn a judgment on a mechanic's lien in the amount of $13,223.34, with interest at six per cent per annum dating from September 11, 1967, awarded the supplier (appellee) by the Circuit Court for Prince George's County. The material supplied, which was paint, was used by the subcontractor, G & H Paint Company, a partnership, on the Palmer Park Apartments. The main thrust of the appellant's several contentions is that the notice of intention to claim a mechanic's lien, as required by Maryland Code (Repl. Vol. 1968) Art. 63, § 11, was inadequate.[1]

The appellant, which is a limited partnership, owned a large apartment complex, known as Belle Haven East Apartments and Palmer Park Apartments, consisting of thirty-five buildings and appurtenances located in Prince George's County. George M. Kline, one of the two general partners was also president of Southeastern

---

1. The relevant provision in Section 11 reads:
" § 11(a) *Generally*—If the contract for furnishing such work or materials, or both, shall have been made with any architect or builder or any other person except the owner of the lot on which the building may be erected, or his agent, the person so doing work or furnishing materials, or both, shall not be entitled to a lien unless, within ninety days after furnishing the same, he or his agent shall give notice in writing to such owner or agent, if resident within the city or county, of his intention to claim such lien."

Builders, Inc., a general contractor engaged by the appellant to build apartments. (We think this latter fact to be irrelevant to the merits of the case in view of *Himelfarb v. B. & M. Weld. & Iron Wks.*, 254 Md. 37, 42, 253 A. 2d 842 (1969) and the cases cited therein). The G & H Paint Company (G & H) was a painting subcontractor on the job to whom Marvelite, Inc., appellee, began selling paint in the fall of 1966. There was no dispute but that the paint, which was the material supplied, and the billing for which was the basis for the mechanic's lien, was delivered by the appellee to the apartment site. There was no written contract between the appellee and G & H. For several months G & H paid for the paint supplied to the job, and on February 8, 1967, the appellant wrote to Mr. Kline informing him that G & H was current with their account and that "our relations with G & H Paint Company, Inc. have been excellent throughout the time we have been selling them."

Shortly after this letter was written, due to financial difficulties, G & H stopped honoring its bills. In late March or early April, the appellee informed G & H that it could no longer supply paint for the job unless the general contractor was aware of the indebtedness to the appellee. G & H refused to go along with this proposal and from April 5, 1967, to May 9, 1967, stopped purchasing paint from the appellee. In May, G & H resumed buying paint from the appellee and the appellee began to promptly send monthly statements to the general contractor's superintendent, a Mr. Wakefield. Between April and August of 1967, Mr. Wakefield discussed G & H's unpaid account with the appellee. Particularly, in June 1967, a Mr. Rodbell, Vice President of the appellee, met with Mr. Wakefield, representing the appellant, and the general partners of G & H, at which time the unpaid account was discussed.

Mr. Wakefield on behalf of the appellant promised that he would see that the appellee was paid half of the account in July and the other half in August of 1967. In August, when the account was still unpaid, Mr. Wake-

field notified the appellee that the general contractor would not make any more payments to G & H unless a release was obtained from the appellee, so as to assure that the appellee would be paid. However, no payment on the account was forthcoming and the appellee continued to deliver paint to the job site until August 9, 1967. Thereafter, the appellee discussed the situation with Mr. Kline, a general partner of the appellant and president of the general contractor. As late as September 7, 1967, Mr. Kline again discussed the unpaid bill with the appellee. Five days later on September 12, the appellee wrote a letter to Mr. Kline in his capacity as president of the general contractor reciting that the balance of $13,223.34 was still due and owing "by G & H Paint Co., Inc.," and the letter referred to the June meeting attended by the supplier, the contractor and G & H. There was a further discussion between appellee and Mr. Kline by telephone on October 9. On October 13, the appellee sent by certified mail, its notice of intent to claim a mechanics' lien to "Messrs. George G. Kline and Earl W. Kintner, general partners-Palmer Park Limited Partnership-112 Brawner Building-17th Street, N. W., D. C." The body of the notice reads as follows:

"Gentlemen:

In Accordance with Article 63, Section 11 of the Annotated Code of Maryland, notice is hereby given that Marvelite, Inc., intends to claim a Mechanics' Lien for furnishing materials in the amount of $13,223.34 on the lot and improvements formerly known as Palmer Park Apartments now known as Belle Haven East Apartments at or near George Palmer Highway and Belle Haven Drive, Lanham, Prince George County, Maryland of which you are the owners. This property is described at least in part in the land records of Prince George County in Liber 104 folio 150 and liber 3225 and folio 286.

Pursuant to the above cited Section of the Code, this notice is given within ninety (90) days of the furnishing of the materials.

The contract upon which the lien is claimed and upon which it will be filed is a contract between Marvelite, Inc., and G & H Painting Co., Inc. a Subcontractor of South Eastern Builders, Inc., the general contractor. Although the materials have been supplied, payment has not been received.

Article 63, Section 13 of the Annotated Code of Maryland states in part that:

'. . . it shall be lawful for the owner to retain from the cost of such building the amount which he may ascertain to be due to the party giving such notice.'

> Very truly yours,
> Marvelite, Inc.
> Franklin Rodbell
> Vice-President"

After the appellant received the above notice under date of October 13, 1967, no further payments were made to G & H.

The mechanic's lien was recorded on December 11, 1967, and the bill of complaint to enforce the lien was filed shortly thereafter.

Appellant attacks the adequacy of appellee's Section 11 notice of intent to claim the mechanic's lien on several fronts. He contends that the notice was deficient because the name of the subcontractor was incorrectly set forth, the property upon which the material was used was not adequately described, the material used was not set forth with sufficient particularity, and the statement "that notice is given within 90 days of the furnishing of the materials" is not a sufficient statement when materials are supplied under two separate contracts. In order to assess the sufficiency of appellee's notice of intent, one must look to the purpose of Section 11 within the entire me-

chanic's lien statute and the gloss which our prior decisions have put upon the section. When the owner of a building receives a supplier's notice of intent, he has the right granted by Section 13, Article 63 to retain the amount claimed in the notice from the general contractor. The theory of the section was ably set forth in *Bounds v. Nuttle,* 181 Md. 400, 406, 30 A. 2d 263 (1943) :

> "The mechanic's lien law was passed to cover just such a situation and to protect material men. The theory of it is that the owner gets the benefit of the material, and he has control of the money. If he negligently and carelessly pays the money out to the contractor without taking precautions to see that it is applied to the payment of the materials which go in the building, then he must stand the loss rather than the material man, who has no opportunity to protect himself once he has delivered the materials."

See also *T. Dan Kolker, Inc. v. Shure,* 209 Md. 290, 121 A. 2d 223 (1956), and *William Penn Supply Corp. v. Watterson,* 218 Md. 291, 146 A. 2d 420 (1958).

While the purpose of Section 11 is rather clear, the information which must be included in the notice of intent has been the subject of controversy. It has been contended that Section 11 requires only a statement that the material man intends to file a claim. This argument was recently put to rest in *Himelfarb v. B & M Weld. and Iron Wks.,* 254 Md. 37, 253 A. 2d 842 (1969). There it was argued that "§ 11 (a) requires only a notice of 'intention to claim such lien'; that its notice did this and 'that the time when the materials were furnished or the work done' is a part of the claim as prescribed by § 19 of the Act." *Id.* at 41. The Court rejected this argument relying largely on *Welch v. Humphrey,* 200 Md. 410, 90 A. 2d 686 (1952). *Himelfarb* concluded that "our decisions have been consistent in reading into the notice called for by § 11 the requirements of § 19 respecting the structure of the claim." *Id.* at 41.

With this history in mind, we must study appellant's contentions. The first is that the name of the subcontractor involved was incorrectly set forth in the notice of intent as the G & H Painting Co., Inc. rather than the G and H Paint Co. The simple answer to this is that not even Section 19 requires the subcontractor's name to be in the mechanic's lien itself. The information required by the notice of intent certainly need not be more strict than that required in the lien. The fact that it was included incorrectly might be relevant where there was some showing that the owner had relied on the mistake to his detriment. There was no such showing and the record indicates that no funds were paid to the G and H Paint Co. after receiving the notice of intent.[2]

The second alleged deficiency is that the premises are not adequately described. The notice gives the names of the apartment complex, the streets it is bounded by, and the liber and folio record of the property. Appellant's contention seems to be that the following requirement of Section 19 is not met: "the locality of the building and the number and size of the stories of the same, or such other matters of description as may be necessary to identify the same." It would be an unreasonable burden to require the supplier to know upon which of the 35 buildings the paint had been used. This issue was before us in *District Heights Apartments, Section D-E, Inc. v. Noland Company Inc.*, 202 Md. 43, 95 A. 2d 90 (1953), and we there held that:

> "Maryland has adopted the rule that where a materialman delivers materials to the site of construction of a number of buildings comprised in a single project, it is not essential to the validity of a mechanic's lien claim that he must

---

2. Cf. *Kitchen v. Himelfarb*, 254 Md. 372, 254 A. 2d 694 (1969), wherein we held that an attempt by the supplier to amend a mechanic's lien some eleven months after the original claim had been filed erroneously under the style of a corporate entity when in fact the supplier was a partnership, was of no avail. In the case at bar the incorrect designation was not of the supplier or owner but the subcontractor.

show in which buildings the specific materials were used or even that the materials were actually used on the project if they were purchased for and delivered to the site of the work * * * It is reasoned that to require positive testimony that each article was used in a certain building would make the Mechanic's Lien Law more of a burden than a benefit." *Id.* at 48.

See also *Fulton v. Parlett,* 104 Md. 62, 64 A. 58 (1906).

The third alleged deficiency is that it was not specified what type of supplies were furnished the only reference being to materials. This flaw is more serious than the first two but we believe it does not vitiate the notice of intent. In the case of *G. Edgar Harr Sons v. Newton,* 220 Md. 618, 155 A. 2d 480 (1959), the issue was whether failure to specify the time period within which the materials were furnished spoiled the legal sufficiency of the notice of intent. While the notice did not state that the materials were furnished within the statutory period it did provide: "This notice is standard procedure and is made without prejudice with all our accounts which are nearly sixty days old." The Court held that:

"* * * While the notice in the instant case is not a model of clarity, we think it fairly indicates that it was given in order to comply with the statute and that the work and materials referred to had been furnished within the statutory period. * * * The purpose of the statutory requirement as has been frequently stated is to afford an opportunity to the owner to retain the amount claimed out of any moneys payable by him to the principal contractor. * * * We think the notice served this purpose and that there was at least substantial compliance." *Harr, supra,* at 621, 622.

We believe that there was such substantial compliance in the case at bar. In the instant case the notice set forth

the charge for the materials supplied ($13,223.34), so as to provide sufficient information to the owner to enable him to withhold that amount from the contractor and this information was relevant to the quantity of material used. In *Thomas v. Barber*, 10 Md. 380, 390, 391 (1857), the progenitor of many of these cases, the Court took issue with the failure of the notice to set forth the nature and kind of materials furnished because it left the owner in the dark as to the dollar amount intended to be claimed. As previously stated, in this case the sum to be withheld by the owner was expressly set forth. In addition, the notice indicated that the subcontractor was a paint company. We feel that a reasonable man could have surmised from the body of the notice that the material supplied was paint.[3] This was not the case in *Himelfarb, supra*, where the notice contained no mention of when the materials were supplied or work performed which would allow the owner to determine whether they had been supplied within the statutory period.

The last major contention is that there were two contracts rather than one with the subcontractor so that specific dates for each should have been cited in the notice rather than the statement that the supplies had been furnished within 90 days.[4] See *Clark v. Boarman*, 89 Md. 428, 43 A. 926 (1899). The Court below found that although there was some interruption in the ordering of paint from the appellee, the business arrangement was

---

3. Although not relying on the following facts as a basis for our conclusion in this case, it is revealing to note, that the record shows that the appellee had met with Mr. Kline, a general partner in the appellant partnership, about a month before sending the notice of intent at which time the delinquent account of G & H was discussed and again, had discussed the account with him on the telephone about five days before the notice was sent.

4. The appellant also raises the issue of estoppel on the part of the appellee from claiming the mechanic's lien, because of the letter it wrote to the contractor stating that the subcontractor's account was current and in good standing and its subsequent failure to notify the owner in writing that G & H was no longer current. However, the appellant failed to pursue this issue in the body of its brief and since the chancellor found no estoppel in his interpretation of the facts and a reading of the record fails to reveal the presence of any such equitable defense, we see no need to pursue this issue.

nothing more than an open account method of transacting business. The standard for determination is set forth in *Trustees of German Lutheran Church v. Heise and Co.*, 44 Md. 453 (1876) as follows:

> "In the absence of evidence of such express contract, the character of the account, the time within which * * * the materials were furnished and the object of the * * * materials may afford proper grounds for the presumption that the * * * materials were furnished with reference to an understanding from the commencement that such materials should be furnished, if required by the builder; in such case, it is from the last item in the account that the notice and the time within which to take the lien should date; but where the materials are furnished for separate and distinct purposes, or at different times, and at considerable intervals, or under distinct contracts or orders, though to be used by the contractor or builder in executing one and the same contract with the owner, no such presumption will arise, and the right to take the lien must date from the time of furnishing the different parcels of material, and not from the last item in the account." *Id.* at 469, 470.

We believe there was enough evidence to allow the trial judge to conclude that this transaction constituted an indivisible contract. Therefore the statement in the notice of intent that the materials were delivered within ninety days was in substantial compliance with Section 11. See *G. Edgar Harr Sons v. Newton, supra; Mashkes v. Jakenjo, Inc.*, 220 Md. 457, 154 A. 2d 439 (1959); and *Himelfarb, supra*.

*Judgment affirmed, appellant
to pay costs.*