## WILLIAM PENN SUPPLY CORPORATION
### *v.* WATTERSON et ux.

[No. 50, September Term, 1958.]

292

*Decided November 24, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND and HORNEY, JJ., and HENRY, Chief Judge of the First Judicial Circuit, specially assigned.

*William T. Pace,* with whom were *Robert W. McCullough* and *William H. McCullough* on the brief, for appellant.

*Robert A. Wallace,* for appellees.

HORNEY, J., delivered the opinion of the Court.

William Penn Supply Corporation (the materialman) filed a bill in equity against Earl D. Watterson and Emma B. Watterson, his wife (the Wattersons or owners, and, individually, the husband or wife) in the Circuit Court for Montgomery County to enforce a mechanics' lien against the property on Mayfair Place in Silver Spring owned by the Wattersons. The chancellor dismissed the bill. The materialman appealed.

The Wattersons purchased an unimproved lot from Karl L. Woolbert and his wife (the builders) who contracted to build a new house thereon for $23,830 in accordance with the plans and specifications attached to the contract. The Wattersons had the privilege of selecting certain materials, including the equipment to be installed in the kitchen, within a fixed cost range.

The husband selected the kitchen equipment at the showroom of the materialman. Cost quotations were mailed to him at his business office, but there is a dispute as to who—builders or owners—ordered delivery of the equipment. The equipment, which cost $1510.47, was delivered by the materialman and installed by the builders. The first delivery was made June 16, 1953,[1] and the last sometime prior to July 15 or 17. The delivery tickets made out to the husband, were signed by the builders or one of their mechanics. On or about August 1, while the house was still under construction, the builders quit because of financial difficulties, and the husband took over the completion of the house. The Wattersons paid the builders $7850 or $8000, and finished the house at an undisclosed cost, financing the whole by a deed of trust for $18,500. The last payment was made to the builders on July 18 or 20. The builders conveyed the property to the Wattersons as tenants by the entireties on August 4, and the Wattersons moved in about the middle of August. The builders failed to pay the materialman.

---

1. All year dates hereinafter referred to are "1953" unless otherwise indicated.

The wife took no part in the planning of the house or selecting or ordering materials, and her husband never conferred with her about such matters. The materialman admits that its dealings were solely with the husband.

The owners claim that no notice of an intention to file a lien was ever given to them, or either of them, but this is denied by the materialman. On September 4, within the sixty-day period from July 15—the date on which the chancellor found the last delivery of materials was made—the materialman filed a mechanics' lien against the house, naming the Wattersons as the owners or reputed owners. An itemized statement showing the kind of materials delivered, the dates of delivery, and the cost thereof was attached to the lien. On the date the lien was entered, a registered letter, with a request for a return receipt, was addressed to the Wattersons and mailed. The letter, which advised the owners of the entry of the lien, contained two exact copies of the lien and itemized statement. The letter was received by the husband, who read it and took it to his attorney. There is no proof that the wife ever received a copy of the lien and statement, and the husband does not recall having talked to her about it. There is no dispute that the builders were the legal owners and that the Wattersons were the equitable owners when the materials were delivered and that the Wattersons were the legal owners when the lien was entered.

The chancellor found as facts that the materialman *failed to establish* that the husband was acting as agent for his wife, and that the wife *had not received* a proper notice from the materialman of its intention to claim a lien.

Two questions are presented on the appeal: (i) was there proof of agency?; and (ii), if not, was there compliance with the statutory requirement of notice?

### (i). Agency.

Unless the chancellor's finding that the husband was not acting as agent for his wife or his finding that the wife had not received the statutory notice was clearly erroneous, we are without authority to set aside the order dismissing the bill. Moreover, we must give due regard to his opportunity

to judge the credibility of the witnesses. Maryland Rule 886 a; *Blair v. Haas,* 215 Md. 105, 137 A. 2d 145 (1957). We see nothing in the record which would warrant a rejection of the chancellor's finding on the agency question. It is conceded that the materialman had no direct contact with the wife. There is no proof whatsoever that the husband was acting for his wife as well as himself when he selected and ordered the kitchen equipment—if, in fact, he did order it, which is disputed. Other than the unconvincing argument that the purchase-construction contract shows agency, the materialman relies solely on the testimony of the wife to support its contention that the wife subsequently approved or ratified the purchase of the equipment allegedly made by her husband for himself and as her agent. The wife did testify that she left the building of the house, including the installation of the kitchen equipment, up to her husband, that she approved of whatever her husband did with regard to the kitchen equipment because she thought he knew what he was doing, and that what he did was done for her. But her approval of what her husband had done and her general statement that what he did was done for her—in view of the remainder of her testimony and the testimony of her husband and the representative of the ·materialman—is not sufficient to establish ratification of the acts of her husband.

We have consistently held that the relationship of principal and agent between a husband and wife may not be implied from the marital status of the parties. *Blenard v. Blenard,* 185 Md. 548, 45 A. 2d 335 (1946); *Adkins & Douglas Co. v. Webb,* 160 Md. 571, 154 A. 259 (1931); *Whittle v. Brown,* 217 Md. 161, 141 A. 2d 917 (1958). Generally, the mere knowledge of a wife, without more, that her husband is constructing a building on or making improvements to property owned by them as tenants by the entireties is not sufficient to establish that the husband is the wife's agent. *Adkins & Douglas Co. v. Webb, supra; Blenard v. Blenard, supra; Bukowitz v. Maryland Lumber Co.,* 210 Md. 148, 122 A. 2d 486 (1956). Nor does her mere failure to interpose an objection to such construction or improvements imply an inten-

tion on her part that her interest in the property shall be bound. *Blenard v. Blenard, supra.*

For other circumstances—present in the instant case—which have been held to disprove agency see *Rust-Owen Lumber Co. v. Holt,* 60 Neb. 80, 82 N. W. 112 (1900), [wife took no part in the planning or construction of the building]; *Marshall v. Hall,* 200 S. W. 770 (Mo. App. 1918), [the house served as a family residence]; *Bliss & Logan v. Patten,* 5 R. I. 376, 381 (1858), cited in the annotation in 4 A. L. R. 1025, 1051 (1919), [wife said if her husband were suited she would be suited].

We agree with the chancellor that the materialman failed to establish that the husband was acting as agent for the wife.

(ii). Notice.

Since the materialman has failed to prove agency, it is not entitled to enforce its mechanics' lien unless it can show that the statutory requirement of notice of its intention to claim a lien has been substantially complied with. *Bukowitz v. Maryland Lumber Co., supra.*

In this case the materialman, without any prior notice of its intention, filed a mechanics' lien in the clerk's office. On the same day it sent the owners a registered letter in which it enclosed two copies of the lien and the usual itemized statement and advised the owners of the entry of the lien. The husband, who received the letter, took it to his attorney, but did not discuss it with his wife. That the wife was not served with anything—notice of intention or lien and statement—is not disputed. But the materialman contends that the filing of the lien was constructive notice of its intention to claim a lien.

Code (1951), Art. 63, § 11 provides when and under what circumstances the notice of intention shall be given, thus:

"If the contract for * * * materials * * * shall have been made with any * * * builder or any other person except the owner * * *, or his agent, the * * * [materialman] shall not be entitled to a

lien unless, within sixty days [2] after furnishing the
* * * [materials], he or his agent shall give notice
in writing to such owner or agent [of the owner]
* * * of his intention to claim such lien."

It is clear that such notice is required to protect the owners
of property. Section 13 of Article 63, *supra,* states that:
"* * * it shall be lawful for the owner to retain from the
cost of * * * [a house] the amount which he may ascertain
to be due to the party giving such notice." Thus, the owner
is afforded an opportunity to retain in his hands—out of
money payable by him to the builder—the amount claimed
by the materialman, to be applied by the owner to the pay-
ment of the lien against his property if and when such lien
is filed. See *Treusch v. Shryock,* 51 Md. 162 (1879) ; *Fulton
v. Parlett,* 104 Md. 62, 64 A. 58 (1906) ; *Bukowitz v. Mary-
land Lumber Co., supra.* Moreover, as was stated in *Hill v.
Kaufman,* 98 Md. 247, 56 A. 783 (1904), § 11, *supra,* re-
quires *personal service* of the notice on the owner or his agent.
See also *Bukowitz v. Maryland Lumber Co., supra.*

The argument that the filing of its mechanics' lien—within
the time the materialman was required to give the owners no-
tice of its intention to claim a lien—constitutes constructive
notice of such intention is novel, but it is without merit. The
mere filing of a lien or any other instrument on the public
records does not operate to give constructive notice to anyone
unless such effect has been given to it by some statutory pro-
vision. *Gray v. Town of Thermopolis,* 33 F. Supp. 73, 75
(D. Wyo. 1936). See also *Tucker v. American Aviation &
General Ins. Co.,* 198 Tenn. 160, 278 S. W. 2d 677 (1955).
Section 11, *supra,* specifically provides that a materialman is
not entitled to a lien unless the required notice is given *in
writing.* An oral notice is not sufficient and there is no pro-
vision that the recording of a mechanics' lien within the speci-
fied time shall be constructive notice to the owner. In *Welch
v. Humphrey,* 200 Md. 410, 90 A. 2d 686 (1952), we held
that actual oral notice—a conference with the owner before

2. Chapter 629 of the Acts of 1957 increased the time within
which notice must be given from 60 to 90 days.

giving the written notice—did not relieve the materialman from the obligation of stating the particulars of the claim in the written notice subsequently given. If actual oral notice is not enough to satisfy the requirements of the statute as to written notice, it is clear that constructive notice by the mere filing of the lien in the recording office could not possibly satisfy the statutory requirements. In *Berry v. McAdams,* 93 Tex. 431, 55 S. W. 1112, 1114 (1900), it was said:

> "The policy of the law is to relieve the owner from demands upon the ground of actual knowledge and constructive notice, because he could rarely defend himself from such claims. Written notice is certain and definite information upon which the owner must act."

See also *Potter Title & Trust Co. v. Berkshire,* 156 Pa. Super. 1, 39 A. 2d 268 (1944), [where notice in a specified manner is prescribed by statute, that method is exclusive] ; and *Pennsylvania Co., Etc. v. Forrest Hill Bldg. & L. Ass'n,* 125 Pa. Super. 465, 190 A. 556 (1937), [where notice is relied on to sustain forfeiture or divestiture of rights, directions as to giving of notice must be strictly complied with].

Even if we assume, without deciding, that a copy of a duly recorded mechanics' lien and the accompanying particulars thereof, if and when properly served, was sufficient to constitute written notice of an intention to claim a lien, it is certain the copy of the lien must be *personally* served as the statute contemplates. That was not done in this instance, at least so far as the wife is concerned. In the *Bukowitz* case, *supra,* we held that there is no implied agency for one spouse to receive the notice on behalf of the other spouse. See also *Welch v. Humphrey, supra,* in which the lien filed subsequent to the giving of a defective written notice was held to be invalid.

The chancellor was clearly right when he found that the wife had not received a proper notice from the materialman of its intention to claim a lien.

In view of our decision with regard to the two questions discussed, it is not necessary for us to consider the other questions raised by the materialman. Indeed most of them

were simply variations of those which have been decided herein.

The order of the chancellor dismissing the bill will be affirmed.

*Order affirmed, the appellant to*
*pay the costs.*