ROUTZAHN ET UX. *v.* CROMER ET AL.

[No. 215, September Term, 1958.]

*Decided May 11, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Chester F. Naumowicz, Jr.,* with whom was *Robert S. Bains* on the brief, for the appellants.

*John M. McInerney* for the appellees.

PRESCOTT J., delivered the opinion of the Court.

From a decree that ordered specific performance of an alleged contract, the owners of the property involved have appealed.

The appellants, Roy C. Routzahn and Anna E. Routzahn,

are the owners, as tenants by the entireties, of a tract of land consisting of 30 acres, more or less, lying in Montgomery County. On May 15, 1956, one Robinson, a real estate broker with offices in Montgomery County, approached appellants, without solicitation upon their part, with an offer to buy the said land on behalf of another. The offer consisted of a printed form contract with the blanks filled in and completed, whereby the land would be sold for a total price of $50,000 with a deposit of $5,000, total cash of $12,500 of which sum the deposit was a part, the balance of $37,500 to be secured by a first deed of trust payable as follows: The principal sum of $37,500 to become due and payable on or before 10 years, with 4% interest, interest payable annually with first payment of interest of $1,500 due 12 months after settlement; the first payment of principal in the sum of $4,166.37 due 24 months after settlement and a similar curtail to be made annually thereafter; and a commission of 10% to be paid by the appellants to Robinson. The contract form had the blank for the name of the buyer filled in with the typewritten name "Lucille Binus" and was signed by her in ink at the end. Robinson had with him a check in the sum of $5,000 signed by Lucille Binus, the same to be the down-payment referenced in the contract, and he told the appellants that Lucille Binus was acting as agent for a group of unidentified doctors and dentists. Appellants did not discuss the offer with Robinson on May 15, but told him to leave it with them for their consideration. On May 16, 1956, they telephoned Robinson and told him the offer was not acceptable. Later on that day, Robinson came to the appellants' farm and further discussed the proposed sale. As a result of these negotiations, the same printed form contract was modified by Robinson's hand printed addition on the reverse side thereof of clauses which would (1) increase the purchase price to $60,000; (2) increase the rate of interest on the trust to 5%; (3) reserve from the sale the residence of the appellants together with 1½ acres of land; and (4) set Robinson's commission at $5,000. Both Mr. and Mrs. Routzahn then signed the instrument and Robinson departed to secure the approval of Lucille Binus, or her principals. On May

23, 1956, Robinson returned to the appellants' home. He had with him the same printed instrument, unchanged, except that the typewritten name and signature "Lucille Binus" had been stricken out and the name "Anna Cromer" substituted therefor, both typewritten in the blank for the buyer's name and signed at the bottom of the contract, and the name "Anna Cromer" was signed on the reverse side of the contract. Robinson also had with him a $5,000 check drawn on the Union Trust Co. of Washington, D. C., signed by Anna Cromer to serve as the deposit mentioned in the contract. He took the paper writing to the appellant, Roy C. Routzahn, who was at work in a field near his home and presented it to him for signature. In response to inquiries as to Anna Cromer's check, Robinson assured Routzahn that Anna Cromer was a new buyer acting for herself, and that her check was good. In fact, Anna Cromer was acting as a straw party for Joseph Dansansky and Louis Norman and her bank account was insufficient to cover the check, but these facts were unknown to Routzahn and he acted in reliance on Robinson's representations. Routzahn then initialed the instrument, but no request was made that the appellant, Anna E. Routzahn, approve it, or that she sign or initial it. She did not, in fact, sign or initial the same; nor did she in any way indicate approval of it, nor was she present at the time Roy C. Routzahn and Robinson discussed the change in buyers and the deposit check, and her husband initialed the contract. Anna Cromer's $5,000 check was subsequently returned to her by Robinson and destroyed. The record does not indicate that Mr. and Mrs. Routzahn were aware or approved of the return of the $5,000 deposit.

Thereafter, on August 6, 1956, Anna Cromer, acting as agent for Joseph Dansansky and Louis Norman, executed a contract to sell the property to Isadore Gudelsky, thereby assigning all of her right, title and interest therein to him. And on or about November 5, 1956, the appellants were notified that settlement would be held at the office of Realty Title Company on November 9, 1956. At the settlement, which Robinson attended as Anna Cromer's representative, the appellants were requested to execute a deed to Contee Sand and

Gravel Co., Inc., (a corporation owned and/or controlled by Gudelsky) and to take in return a deed of trust executed by said company. The appellants refused to execute such a deed, and suit was initiated in the name of Anna Cromer. Thereafter testimony was taken, and on November 18, 1958, the Circuit Court for Montgomery County, sitting as a Court of Equity, entered a decree for specific performance of the contract in favor of Anna Cromer.

On the above statement of fact, the appellants raise several questions, but, in the view that we take of the case, it will be necessary to consider but one. It is apparent, when the Routzahns, after adding new terms and conditions thereto, signed the paper writing that had been previously signed by Lucille Binus, that this constituted a counter offer to Lucille Binus by the Routzahns. It is also clear that one of the necessary terms of any proposed contract is the person with whom the contract is to be made; consequently, an offer made to one person cannot be accepted by another. *Fifer v. Clearfield Coal Co.,* 103 Md. 1, 7, 862 A. 1122; Restatement, *Contracts,* Sec. 54; 1 Williston, *Contracts,* (rev. ed.), Sec. 80. And, as a party has a right to contract with whom he pleases, and another cannot be thrust upon him without his consent, it makes no difference whether it was important for the offeror to contract with one person rather than another. *School Sisters of Notre Dame v. Kusnitt,* 125 Md. 323, 340, 93 A. 928. Therefore, when the signature of Lucille Binus was stricken from the instrument and Anna Cromer's substituted therefor, no contract between the Routzahns and Anna Cromer resulted; this instrument, after such substitution merely constituted a new offer by Anna Cromer to the Routzahns to create a contract, which, in order to ripen and culminate into one had to be accepted by the Routzahns. After it had been signed by Anna Cromer, it was initialed by Mr. Routzahn, but Mrs. Routzahn did not sign it, nor did she in any manner ratify or confirm the same, and there was no attempt made to establish Mr. Routzahn as her agent. This Court has repeatedly held that when property is owned by the entireties neither husband nor wife, acting alone, can encumber or dispose of any part of the estate. *Columbian*

70

*Carbon Co. v. Kight,* 207 Md. 203, 209, 114 A. 2d 28; *Buko-witz v. Maryland Lumber Co.,* 210 Md. 148, 153, 122 A. 2d 486; *Lissau v. Smith,* 215 Md. 538, 546, 138 A. 2d 381; *William Penn Supply Corp. v. Watterson,* 218 Md. 291, 146 A. 2d 420. And the relationship of principal and agent between a husband and wife may not be implied solely from the marital status of the parties. *Bukowitz v. Maryland Lumber Co.; William Penn Supply Corp. v. Watterson,* both *supra.* Consequently, any attempt on the part of Mr. Routzahn to grant or transfer any interest in the property when he initialed the proposed contract was futile without the signature of Mrs. Routzahn, and the request for specific performance should have been denied.

> *Decree reversed, the appellees to pay the costs.*