DUCK, ET UX. *v.* QUALITY CUSTOM HOMES, INC.

[No. 361, September Term, 1965.]

610

*Decided June 1, 1966.*
*Motion for rehearing filed and denied July 1, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-
HEIMER, BARNES and McWILLIAMS, JJ.

*John T. Bell* with whom were *Charles W. Bell* and *Bell &
Bell* on the brief, for appellants.

*James F. FitzGerald,* with whom were *Floyd Willis, III,* and
*FitzGerald & Holmes* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

Quality Custom Homes, Inc. (Quality) filed an action in
*assumpsit* based on the common counts against Robert E. Duck
and Barbara D. Duck, his wife, (the Ducks). After Quality
filed a bill of particulars, in response to the Ducks' demand,
the Ducks filed a general issue plea. The case was heard by
Judge Shure, sitting without a jury. At the close of Quality's
evidence, the Ducks requested a directed verdict [1] which was
denied. They elected not to offer evidence, and Judge Shure
found for Quality. After denying the Ducks' motion for a judg-
ment n.o.v. or a new trial, Judge Shure entered a judgment for
Quality against the Ducks for $4055.12, the total amount
claimed. The Ducks appealed.

The Ducks contend that there was a material variance be-
tween the pleadings and the proof, that Quality failed to meet
its burden of proof, that the burden was not met as to Barbara
Duck, and that the alleged agreement violated the Statute of
Frauds. The Ducks also contend that the trial court erred in
not receiving into evidence a "purported real estate contract"
it offered through one of Quality's witnesses.

Quality's bill of particulars sets up a claim, still based on
the common counts, for the net amount due it by the Ducks on
the cost of a house and a particular lot. At the hearing, Carl
Monje, president of Quality, testified that in the summer of

---

1. The motion should have been to dismiss. Maryland Rule 535.

1962 Quality was engaged in the business of building "package homes" and that Robert Duck was a construction foreman employed by the firm. Monje and Robert Duck discussed the construction of a house for the Ducks on a lot which Quality had the right to purchase. Quality and Robert Duck entered into an agreement in which Quality assigned its purchase option to the Ducks and Robert Duck paid Quality $500, the amount that Quality had deposited on the lot. Robert Duck paid $1250 to the grantor and borrowed $1500 from Quality for the final payment on the lot. Monje testified that the $1500 had not been repaid. The agreement between Quality and Robert Duck concerning the purchase of the lot was admitted into evidence. The lot was the same lot referred to in the bill of particulars, and the agreement recited that the lot was to be "conveyed in the name of Robert E. Duck and Barbara D. Duck." Quality also agreed to build a "Lesco Home" at cost plus ten percent above all labor and materials purchased locally; Monje stated that this arrangement was open to any employee of Quality. On September 11, 1962 Quality entered into a "turnkey authorization" which was signed by Monje, on behalf of Quality, and by Robert Duck. The agreement stated that Robert and Barbara Duck authorized Quality to enter into a formal contract to build a "Lesco Home" and that the owner and "undersigned" agreed to purchase the home at $23,000. On cross-examination, Monje testified that the purpose of the agreement was to order plans and that Quality was an agent of Lesco in the sense that it obtained package homes from Lesco.

Monje testified that the "package" [home] for the Ducks arrived, the Ducks procured a construction loan in their joint names, the home was constructed under Robert Duck's supervision, and the completed home was occupied by Mr. and Mrs. Duck in the spring of 1963. Monje then stated that he and Robert Duck computed the costs of the home, and Monje explained the net amount due Quality on the entire transaction. (The Ducks were credited with the proceeds of the construction loan, for Robert's fee in supervision, for their expenses in correcting defects and for one-half of the discount the supplier, Lesco, had given Quality on the package). This explanation was not objected to, and it remained uncontradicted.

The Ducks contend that there was a material variance in that Quality failed to prove what it alleged in its pleadings and bill of particulars—the cost of a home and lot less certain credits. A bill of particulars becomes a part of the pleadings and is binding on the pleader, Maryland Rule 346 e, 2 Poe, *Pleading & Practice* § 116 (5th ed. 1925). While at one time the proof had to follow strictly the allegation, *Bryan v. Coursey*, 3 Md. 61, 66 (1852), now all that is required is substantial agreement between the pleadings and proof and there is no material variance unless there is disagreement in a matter essential to the claim. *Challenge Clothes Corp. v. Polski*, 181 Md. 590, 593, 31 A. 2d 309 (1943) and cases therein cited; 1 Poe, *supra*, § 712. In *Norris v. Graham*, 33 Md. 56 (1870), cited by the Ducks, the court found there would be a material variance if the plaintiff were allowed to prove the defendant liable on the underlying contract rather than as a guarantor as alleged. See also *Norris v. Ald New York, Inc.*, 227 Md. 110, 175 A. 2d 749 (1961), wherein the plaintiff was restricted to proof of a writing recited in his bill of particulars. Here Monje's testimony as to the computation of costs and the credits support the pleadings, which based the claim, not on a contract, but only on the common counts. Even if there is a special contract and the plaintiff has performed, he may declare on the common counts. *Bright v. Ganas*, 171 Md. 493, 497, 189 Atl. 427 (1937). We find no material variance.

The Ducks contend that Quality failed to meet its burden of proof because in an action for the purchase money of land sold by it, it had to show good title or, if the action were for construction monies, there was lack of evidence as to the cost of labor, materials and other particulars of such a claim. This contention fails because it misconstrues the nature of the pleadings. Quality sued on the common counts in *assumpsit*. There can be recovery on the common counts where the plaintiff has performed his part of the contract and nothing remains but to collect what is due. *Precision Dev. Co. v. Fast Bearing Co.*, 183 Md. 399, 407, 37 A. 2d 905 (1944) and *Conservation Co. v. Stimpson*, 136 Md. 314, 317, 110 Atl. 495 (1920). Monje's testimony for Quality as to the unpaid loan, the agreement to construct a "Lesco Home", the occupancy of the Ducks, and

as to the amount still due from the Ducks clearly establishes a *prima facie* case under the common counts. Quality sustained its burden of proof as to all the elements of its cause of action and the court below properly overruled the Ducks' motion to dismiss.

The Ducks contend that the requirements of the Statute of Frauds are not met. One who has performed to the extent that he could, under a contract unenforceable because of the Statute of Frauds, may recover on the common counts on a *quantum meruit* basis for the fair value of his services and money expended in reliance on the contract. *Mangione v. Braverman,* 234 Md. 357, 360-61, 199 A. 2d 225 (1964) ; *Stevens v. Bennett,* 234 Md. 348, 352, 199 A. 2d 221 (1964), and cases therein cited; *McMahon v. Poisson,* 99 N. H. 182, 107 A. 2d 378 (1954) ; 2 Corbin, *Contracts* § 419 (1950). See also *Annapolis Fire & Marine Ins. Co. v. Rich,* 239 Md. 573, 585, 212 A. 2d 249 (1965). Monje's testimony as to the computation of the costs following the oral agreement and the unpaid loan on the transfer of its purchase option is evidence of the value of Quality's completed performance.

The liability of Barbara Duck is also questioned. The Ducks argue that there was no proof that she is the wife of Robert and that, since she did not sign the turnkey authorization, she is not liable. The evidence supported a reasonable inference that Barbara is the wife of Robert and that he acted in her behalf in signing the turnkey authorization which was offered, in part, as evidence that she was a party to the entire arrangement. The testimony showed that Barbara occupied the house with Robert and the agreement on the lot recited that the title was to be conveyed in the names of Robert and Barbara Duck. Barbara, jointly with Robert, also participated in obtaining the construction loan. Although the relationship of principal and agent is not to be implied solely from the marital status of the parties, *Routzahn v. Cromer,* 220 Md. 65, 150 A. 2d 912 (1959), we have held a husband may act as agent for the wife in real estate transactions. *Grauel v. Rohe,* 185 Md. 121, 126-27, 43 A. 2d 201 (1946). As in *Rohe,* the wife here was not called as a witness and she did not repudiate the agreement. In *Rohe* the court found the parties rescinded an oral agreement to sell a

farm, but here the defendants have occupied the completed home. Even apart from agency, the only evidence offered supports a finding that both Robert and Barbara Duck knowingly received the benefits of what Quality did and are liable in *assumpsit*.

The Ducks also contend that the trial court erred in refusing to admit into evidence a "purported real estate contract." The "purported contract" was not made a part of the record on appeal. The record shows that the "purported contract" was not signed by either party. It was submitted to Robert Duck, not for signature, but as a form to assist him in obtaining an F.H.A. loan. It did not purport to be the agreement between the parties. It was dated March 4, 1963, some months after Quality had completed its performance. Under these circumstances, its exclusion was not prejudicial error. See *Binder v. Benson*, 225 Md. 456, 462, 171 A. 2d 248 (1961), and compare *Cline v. Fountain Rock Co.*, 210 Md. 78, 87-89, 122 A. 2d 449 (1956), wherein the court found an unsigned lease was properly admitted on testimony that it was intended to be an agreement between the parties. The Ducks rely on *Gulf Colo. & Santa Fe Ry. v. Dwyer*, 75 Tex. 572, 582, 12 S. W. 1001 (1890) and *Coupland v. Housatonic R. R.*, 61 Conn. 531, 551-52, 23 Atl. 870 (1892). In *Coupland* the court stated that the record failed to offer sufficient information as to whether the trial court erred in not admitting into evidence an unsigned bill of lading. In *Dwyer* the court found the trial court erred in excluding a bill of lading since it tended to show that the railroad never intended to ratify the contract in issue. Neither case gives solace to the Ducks. The uncontradicted testimony in respect of the unsigned "contract" was that its purpose was to aid the Ducks in refinancing. There is no evidence that the unsigned "contract" indicated Quality repudiated its earlier arrangement as to the sale of the lot and the construction of the Ducks' home. Quality was entitled to the value of its undertaking.

> *Judgment affirmed; costs to be paid by appellants.*