533 A.2d 659

**STATE of Maryland**

v.

**ONE 1984 TOYOTA TRUCK.**

**No. 13, Sept. Term, 1987.**

Court of Appeals of Maryland.

Nov. 23, 1987.

Ann E. Singleton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellant.

No argument or brief filed by appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, and BLACKWELL, JJ.

ADKINS, Judge.

Md.Code (1982 Repl.Vol., 1987 Cum.Supp.), Art. 27, § 297, deals with forfeiture of property, including illegal controlled dangerous substances (CDS), and property used or intended to be used in connection with the manufacture, delivery, packaging, or transportation of those substances. Motor vehicles (conveyances) are among the kinds of property encompassed by the statute. But as to them § 297(a)(4)(iii) provides:

> No conveyance shall be forfeited under the provisions of this section to the extent of the interest of any owner of the conveyance who neither knew nor should have known that the conveyance was used or was to be used in violation of this subtitle....

The question before us is whether a conveyance owned by husband and wife as tenants by the entirety is subject to forfeiture under § 297 when one spouse was well aware that the vehicle was used to transport and to distribute CDS and related paraphernalia, but the other—the innocent spouse—was not. Our answer is that § 297(a)(4)(iii) protects the innocent spouse (or his or her interest in the vehicle) in these circumstances. Because of the nature of a tenancy by the entirety, the 1984 Toyota Truck involved in the case is not subject to forfeiture.

The facts may be quickly sketched. Craig and Debra Kessler, husband and wife, owned a 1984 Toyota truck. It is not disputed that it was owned by them as tenants by the entirety. On 15 June 1985 a police officer observed the truck, saw a substance suspected to be cocaine in it, and arrested the occupants, Craig Kessler and Edward Lindsey. The officer searched the truck and found substantial quantities of cocaine, some marijuana, and CDS paraphernalia. In the officer's opinion the quantity and type of cocaine found indicated an intent to distribute. Craig Kessler was found guilty of violating the CDS laws and in due course the State sought to obtain forfeiture of the truck.

At a hearing in the Circuit Court for Baltimore City, the parties (the State and the Kesslers) stipulated that all of the procedural requirements relating to forfeiture of motor vehicles had been met. The facts relating to the vehicle and its contents on 15 June 1985 and to Craig Kessler's presence on that occasion were all agreed to. Debra Kessler testified. On the basis of that testimony and with ample support in the record, Judge Marvin B. Steinberg found as a fact that Mrs. Kessler was an owner of the truck and had "a real interest in this vehicle...." He also found, with ample support in the record, that

> she neither knew, nor should have known that the conveyance was used, ... or was to be used in violation of the Subtitle. I find that as a fact.

Later, in a careful and comprehensive opinion, Judge Steinberg reiterated those factual findings, concluded that Mrs. Kessler was entitled to § 297(a)(4)(iii)'s "innocent owner" defense, and decided that because of the nature of a tenancy by the entirety, the vehicle could not be forfeited. He so ordered. The Court of Special Appeals affirmed in a well-reasoned opinion by Chief Judge Gilbert, *State v. One 1984 Toyota Truck,* 69 Md.App. 235, 517 A.2d 103 (1986). We granted certiorari and now affirm the Court of Special Appeals.

Before us the State does not question Judge Steinberg's fact-finding. Instead, it argues that as a matter of statutory interpretation, the word "owner" in § 297(a)(4)(iii) should be read as "lienholder," that the "innocent owner" defense is not available to a vehicle owner where a commercial transaction is involved; that even if the "innocent owner" defense is available, the forfeiture statute contemplates that in the case of multiple owners, the guilty knowledge of one must be imputed to all the others; and that even if the imputed knowledge argument is rejected, a conveyance held by the entirety should not be exempt from forfeiture. These contentions require us to construe § 297(a)(4)(iii) and to review the nature and status of tenan-

cy by the entirety in Maryland. We proceed first to a discussion of pertinent aspects of § 297.

### I. Legislative History of Art. 27, § 297

■ Section 297 was enacted by Ch. 403, Acts of 1970, as part of the Uniform Controlled Dangerous Substances Act (the Maryland Act). The Maryland Act was modelled on the Uniform Controlled Substances Act (the Uniform Act) promulgated by the Commissioners on Uniform State Laws in 1970. 9 U.L.A. 187 (1970). The Uniform Act was designed to achieve uniformity among state laws on the subject and between them and federal law, particularly the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 (the Federal Act), Pub.L. No. 91–513, 84 Stat. 1236 (codified as amended at 21 U.S.C. §§ 801–966 (1982)).[1]

Section 505 of the Uniform Act deals with forfeiture, as does § 297 of the Maryland Act. Section 505(a)(4), corresponding to § 297(a)(4), concerns forfeiture of conveyances, including motor vehicles. The Uniform Act includes four defenses or exceptions to the conveyances provisions. One is the "common carrier" defense, § 505(a)(4)(i), that appears in almost identical form in the Maryland Act. Sec. 297(a)(4)(a). A second is a version of an "innocent owner" defense. Under § 505(a)(4)(ii) a vehicle otherwise subject to forfeiture would not be if the offending act or omission occurred without the owner's knowledge or consent. Maryland's version of this tracked the Federal Act rather than the Uniform Act, and protected the owner only if the act or omission occurred while the vehicle was in possession of some person other than the owner by reason of a violation of criminal law (*e.g.*, a stolen car). *Compare* § 297(a)(4)(b) of the Maryland Act with 21 U.S.C. § 881(a)(4)(B). The Uniform Act also contained a provision that looked to protection of the holder of a security interest in a convey-

---

**1.** Despite the stated interest in uniformity, the Maryland Act, as adopted in 1970, "contains numerous variations, omissions and additional matter [when compared to the Uniform Act] which cannot be clearly indicated by statutory notes." 9 U.L.A. at 191.

ance. Sec. 505(a)(4)(iv). The Maryland Act, like the Federal Act, omitted such a provision.[2]

Thus, in 1970 the Maryland Act, so far as it pertained to motor vehicles, differed from the Uniform Act in that the former contained no "innocent owner" defense and no express protection for lienholders, while the latter did.[3]

The Maryland Act was extensively amended by Ch. 659, Acts of 1972. Those changes are noted by Judge Orth, for this Court, in *State v. One 1983 Chevrolet Van*, 309 Md. 327, 330–331, 524 A.2d 51, 52–53 (1987); *see also* Judge Moylan's opinion for the Court of Special Appeals in *State v. 1982 Plymouth*, 67 Md.App. 310, 318–325, 507 A.2d 633, 637–640 (1986). For present purposes, it is enough to say that these changes added provisions looking to the protection of holders of security interests in forfeited vehicles. Sec. 297(f)–(u). Thus, they addressed a subject covered in the Uniform Act but omitted from the 1970 Maryland Act. In addition, they provided extensive guidelines for police officers (§ 297(f)) and for State's Attorneys (§ 297 (g)-(i)) as well as detailed procedural provisions (§ 297 (j)-(*o* )). In addition, the 1972 amendments added some specific directions to the court handling a forfeiture proceeding (§ 297 (p)-(q)), and in doing so, they brought into Maryland motor vehicle forfeiture law another concept embodied in the

---

**2.** For the federal treatment of the security interest problem, *see* 21 U.S.C. § 881(d), 19 U.S.C. § 1618, and 19 C.F.R. 171.13(b).

**3.** While the Federal Act's "conveyance" provisions, like those of the Maryland Act, contained no "innocent owner" defense, the Federal Act did provide for such a defense in the portion dealing with forfeiture of money and the like. Property of this sort was forfeitable under appropriate circumstances "except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(6). The comparable provision in the 1970 Maryland Act was § 297(a)(6), but without the "innocent owner" language. There is no comparable provision in the Uniform Act.

Uniform Act but not in the 1970 Maryland Act—the "innocent owner" defense.[4]

In new § 297(p) the General Assembly instructed that

[a]t the scheduled [judicial] hearing, any owner ... may show by competent evidence that the motor vehicle was not in fact used in violation of this subtitle *or that he neither knew nor should have known that the motor vehicle was being, or was to be so used.* Upon the determination that the motor vehicle was not so used, the court shall order that the motor vehicle be released to the owner. [Emphasis supplied.]

On the other hand (§ 297(q)),

If after a full hearing the court decides that the vehicle was used in violation of this subtitle *or that the owner knew or should have known that the motor vehicle was being, or was to be so used,* the court shall order that the motor vehicle be forfeited to the State. [Emphasis supplied.] [5]

So far as we are now concerned, matters stood thus until 1984. Chapter 549 of that year made further extensive changes. For the most part, as Judge Orth explained in

---

**4.** It is not unlikely that this portion of the 1972 legislation was in direct response to decisions of this Court. In *State v. Greer,* 263 Md. 692, 694, 284 A.2d 233, 235 (1971), and in *Pr. George's Co. v. Blue Bird Cab,* 263 Md. 655, 660, 284 A.2d 203, 205 (1971), we held that owner innocence was not a defense to forfeiture under the 1970 act. In *Blue Bird Cab* we also pointed out that under pre–1970 law, owner innocence had been a defense. *See Commercial Credit Corp. v. State,* 258 Md. 192, 203, 265 A.2d 748, 754 (1970).

**5.** The 1972 Act also inserted an "innocent owner" provision into § 297(f), the guidelines for police officers. Subsection (f)(2) provided (and still provides) that

[a] motor vehicle used in violation of this subtitle shall not be seized and forfeiture shall not be recommended to the State's Attorney when:

\* \* \* \* \* \*

(ii) An innocent registered owner lends his motor vehicle to another and the latter or someone invited into the motor vehicle by such person causes controlled dangerous substances or paraphernalia to be brought into the vehicle without the knowledge of the owner.

*See also* § 297(f)(2)(i).

*One 1983 Chevrolet Van,* 309 Md. at 331–333, 524 A.2d at 53–54, these concerned protection of the interests of the motor vehicle lienholder. But Ch. 549 also added to § 297 a new subsection (a)(4)(iii):

> No conveyance shall be forfeited under the provisions of this section to the extent of the interest of any owner of the conveyance who neither knew nor should have known that the conveyance was used or was to be used in violation of this subtitle.

It is this language to which Judge Steinberg looked when he made his factual findings. It is this language, along with Maryland law about tenancy by the entirety, upon which he relied when he decided the Toyota truck should not be forfeited. The same factors were deemed decisive by the Court of Special Appeals.

## II. Construction of § 297(a)(4)(iii)

The State attacks those results by pointing out that the chief purpose of Ch. 549, Acts of 1984, was the protection of lienholders. Since that was the legislative goal, it asserts, new § 297(a)(4)(iii) should be construed in light of it, and in so doing, the word "owner" should read "lienholder" in order to be consistent with that goal. The State's notion that legislative goals or objectives ordinarily should be considered in interpreting a statute is sound. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–515, 525 A.2d 628, 632–633 (1987). So is its view as to the primary purpose of the 1984 legislation. In *One 1983 Chevrolet Van,* Judge Orth noted that the purpose of Ch. 549 was " 'to alleviate the hardship worked on dealerships with a secured interest in a motor vehicle which has been seized and forfeited in connection with drug arrests.' " 309 Md. at 332, 524 A.2d at 53. He stated flatly: "The Legislature fulfilled its intent and purpose by creating an entirely new scheme for the disposition of a motor vehicle forfeited by reason of its connection with drug crimes." *Id.* Chief Judge Gilbert reached the same conclusion as to legislative intent. *One 1984 Toyota Truck,* 69 Md.App. at 240, 517

A.2d at 105. But this marks the limits of our agreement with the State's position.

To begin with, "in our efforts to discover purpose, aim, or policy we look at the words of the statute." *Kaczorowski*, 309 Md. at 513, 525 A.2d at 632. Sometimes the language in question will be so clear in its import and not productive of any absurd result that we will give full effect to its meaning. *Id.* at 515, 525 A.2d at 633. The word "owner" is certainly broad enough to include "lienholder" and prior to Ch. 549 was so defined (*see* former § 297(g)), but in ordinary parlance one would not give it only the restrictive meaning suggested by the State. Moreover, it is apparent that when it wrote Ch. 549, the General Assembly knew how to describe a lienholder, and how to distinguish a lienholder from an owner in general, when it intended to do so. *See, e.g.*, the title of Ch. 549 ("requiring the chief law enforcement officer to determine the owner and any secured party"); § 297(a)(8) ("holder of an installment sale agreement"); § 297(f)(3) (determination of "the names and addresses of all registered owners and secured parties"); § 297(j) (various provisions dealing with a security interest and a secured party).

But even more to the point, § 297(a)(4)(iii) was not some novel notion inconsistent with the chief purpose of Ch. 549 and inserted therein through some legislative mistake. As we have seen, the concept of an "innocent owner" defense in motor vehicle forfeiture cases had been embodied in the Maryland Act since 1972. All Ch. 549 did was restate the provision slightly and move it to a different place in § 297.

Ch. 549 started out as S.B. 589 (1984). In the form in which it passed the Senate, it accomplished, for the most part, the lienholder protection purposes that had generated it. It did more, however. It also repealed § 297(p) and (q) which in combination had set forth the "innocent owner" defense. The purpose of the measure was to protect lienholders, but nothing in its legislative history suggests that it was also designed to penalize "innocent owners." Per-

haps recognizing this, the House Judiciary Committee proposed the amendment that became § 297(a)(4)(iii), its language partly taken from former subsections (p) and (q) and in other respects reminiscent of the federal "innocent owner" defense expressed in 21 U.S.C. § 881(a)(6); *see* n. 2, *supra.* Thus, the new concepts of Ch. 549 were adopted while consistent provisions of former law were retained rather than repealed.

Like the Circuit Court for Baltimore City and the Court of Special Appeals, we read "owner" in § 297(a)(4)(iii) as at the least including the actual owner of a motor vehicle.

■ The State next argues that the "innocent owner" defense should be restricted to circumstances that do not involve trafficking in drugs—that is, what might be characterized as simple possession cases, as opposed to possession with intent to distribute cases. In ultimate analysis this argument is based on some language in *1982 Plymouth,* 67 Md.App. 310, 507 A.2d 633. In that case, police seized an automobile and recommended forfeiture pursuant to § 297(f). The trial judge found that no sale of drugs had occurred and that none of the other criteria specified in § 297(f)(1) was present. These criteria focus strongly on commercial drug transactions in attempting to explain to an officer the circumstances in which forfeiture must be recommended. The judge further concluded that a vehicle could not be judicially forfeited unless "at least one of the criteria in Subsection F [is] satisfied...." 67 Md.App. at 314, 507 A.2d at 635. The Court of Special Appeals quoted *State v. One 1967 Ford Mustang,* 266 Md. 275, 277, 292 A.2d 64, 66 (1972), to the effect that a judge has no discretion to deny forfeiture "[o]nce the basis of forfeiture under § 297 is established...." 67 Md.App. at 318, 507 A.2d at 637. The court went on to hold that subsection (f) does not contain an additional set of preconditions for forfeiture, but merely guidelines for the police—guidelines the implementation of which are not reviewable by a court in a forfeiture proceeding. *Id.* at 320, 507 A.2d at 638.

In the course of discussing the propriety of the officer's actions, assuming they might be reviewable by the court, Judge Moylan commented that "where an actual or intended commercial transaction is indicated, even the ignorance of the registered owner will not exempt the vehicle from forfeiture." *Id.* at 326 n. 5, 507 A.2d at 641 n. 5. But what Judge Moylan dealt with here was police action under subsection (f), not judicial action under what is now § 297(a)(4)(iii) and what were subsections (p) and (q). Whether Judge Moylan was correct in this interpretation of subsection (f), we need not decide; that question is not before us. Subsection 297(a)(4)(iii) was not before him in *1982 Plymouth,* and he intimated no thought as to its meaning. It is before us, and we hold that its provisions are not restricted to non-commercial drug transactions. Nothing in its language or legislative history suggests that such a narrow reading is required to effect the legislative goal.[6]

### III. Imputation of Guilty Owner's Knowledge

■ The State's next position is to urge that even if (as we have held) the "innocent owner" defense is available where a commercial drug transaction is indicated, the knowledge of the guilty owner must be imputed to all other owners. We disagree.

At the outset of this argument, the State (perhaps in an effort to undercut the trial judge's unassailable fact-findings) treats us to a whiff of red herring by suggesting that Judge Steinberg erroneously placed on it the burden of proving the non-innocence of an owner. State's Br. at 21–22. This is nonsense. Judge Steinberg said that "[s]ection 297 (a)(4)(iii) is an affirmative defense to [motor vehicle] forfeiture proceedings" and that Mrs. Kessler had estab-

---

6. That goal, in the context of the initial 1972 adoption of the "innocent owner" provision, may well have been to override our holdings that under the 1970 Maryland Act, owner innocence was not a defense, and to restore pre–1970 law to the contrary. *See* n. 4, *supra.* Both *State v. Greer* and *Pr. George's Co. v. Blue Bird Cab,* cited in that note, involved sales of CDS.

lished that defense. State's App. at 47–48. He was correct. *See State v. One 1985 Ford*, 72 Md. App. 144, 147, 527 A.2d 1311, 1312 (1987) (once illicit use of vehicle is shown, vehicle is presumptively subject to forfeiture and burden is on owner to show entitlement to exemption).

■ After this false start, the State cites a number of cases which, according to it, support the notion that in this case Mr. Kessler's knowledge should have been imputed to his wife. None of the cases so holds, or even so suggests.

We start with *United States v. One 1971 Chevrolet Corvette*, 393 F.Supp. 344 (E.D.Pa.1975). In that case a vehicle owned by husband and wife as tenants by the entirety was seized because it was used by the husband in illicit activities of which the wife was unaware. The court ordered forfeiture. It said nothing, however, about imputation of the husband's knowledge to the wife. In discussing the "innocent owner" doctrine, the court cited *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 683, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452, 468 (1974), which noted that under federal forfeiture statutes, "the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense." The Supreme Court went on to explain, by way of *dicta*, that constitutional problems might arise if an owner's property subject to forfeiture had been taken from him (by a wrongdoer) without his privity or consent. "Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, *but also that he had done all that reasonably could be expected to prevent the proscribed use of his property;* for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive." 416 U.S. at 689–690, 94 S.Ct. at 2094–2095, 40 L.Ed.2d at 471–472 [emphasis supplied; footnote and citations omitted].

In that context—the federal constitutional "innocent owner" concept—the United States District Court considered whether the wife had "done all that reasonably could be

expected to prevent the proscribed use of [her] property"—the car owned by the entirety—and concluded that her own knowledge of her husband's past criminal history precluded her successful reliance on this possible constitutional defense. 393 F.Supp. at 348. Of course, the Maryland statute does not require that an "innocent owner" do "all that reasonably could be expected to prevent the proscribed use of [her] property;" it requires only that she be an owner who has "an interest" in the vehicle and "who neither knew nor should have known that the conveyance was used or was to be used in violation of this subtitle." Sec. 297(a)(4)(iii).

*State v. One 1968 Buick Electra,* 301 A.2d 297 (Del.Super.Ct.1973), involved what was then 11 Del.C. § 2325: "This subchapter with respect to ... forfeiture shall not apply to or against the owner of a vehicle who has not knowingly used or permitted the vehicle to be used in, or in connection with, the commission of a felony...." A vehicle was titled in joint names of husband and wife. The husband used it in the commission of a felony. The court ordered it forfeited. It reached this result by treating the ownership as joint and several under Delaware law. Under that theory it could treat either husband or wife as the owner. It so treated the husband; thus, the wife's lack of knowledge was immaterial. 301 A.2d at 298. A similar line of reasoning was used in *In re 1979 Lincoln Continental,* 405 So.2d 249, 250 (Fla.App.1981).

In *In re 1976 Blue Ford Pickup,* 120 Ariz. 432, 435, 586 P.2d 993, 996 (App.1978), the Arizona intermediate appellate court similarly held that when a car was registered jointly in names of mother and son, the son was entitled to act as the sole owner. The court so treated him for forfeiture purposes. And because in Texas, by statute, one spouse can obligate community property without the consent or knowledge of the other, a vehicle held as community property was forfeited despite the wife's unawareness of its illicit

use by her husband. *Amrani–Khaldi v. State,* 575 S.W.2d 667, 668 (Tex.Civ.App.1978).[7]

 None of these cases even remotely suggests that the knowledge of a guilty tenant by the entirety must or even may be imputed to the other in the context of an "innocent owner" defense. It would seem just as reasonable to hold that the "innocent" tenant's non-knowledge should be imputed to the guilty one. In any event Maryland cases hold (in the entireties area) that one spouse is not, by that fact alone, an agent for the other, *Arbesman v. Winer,* 298 Md. 282, 468 A.2d 633 (1983); *Routzahn v. Cromer,* 220 Md. 65, 150 A.2d 912 (1959); *White v. Friel,* 210 Md. 274, 123 A.2d 303 (1956), and notice to one is not notice to the other, *Wm. Penn Supply v. Watterson,* 218 Md. 291, 146 A.2d 420 (1958); *Bukowitz v. Maryland Lumber Co.,* 210 Md. 148, 122 A.2d 486 (1956). Moreover, we have held that a court should not impute a husband's criminal act to the wife. *St. Paul Fire & Mar. Ins. v. Molloy,* 291 Md. 139, 433 A.2d 1135 (1981). *See also Caruso v. Republic Ins. Co.,* 558 F.Supp. 430 (D.Md.1983). We see nothing in the forfeiture statute that seems intended to change Maryland law in this respect.

### IV. Tenancy By the Entirety and § 297(a)(4)(iii)

The last string to the State's bow is "[e]ven if the knowledge of a guilty owner is not imputed to other owners under § 297(a)(4)(iii), conveyances held in tenancy by the entireties are not exempt from forfeiture under § 297." State's Br. at 29. The supporting argument proposes that statutory forfeiture should be regarded like divorce, as a way in which a tenancy by the entirety can be severed. In the alternative, it is asserted that forfeiture should be treated like the equitable remedy of partition, or that the

---

**7.** These Arizona and Texas cases are probably no longer good law in view of statutory changes favoring the innocent owner defense. *See In re 1979 Dodge Van,* 150 Ariz. 25, 721 P.2d 683 (App.1986); and *1972 Chevrolet Pickup Truck v. State,* 697 S.W.2d 770 (Tex.App.1985), *rev'd,* 709 S.W.2d 177 (Tex.1986).

estate should be terminated "where wrong has been done." State's Br. at 38. These contentions must be reviewed in light of Maryland's staunch adherence to the common law view of tenancy by the entirety. *Bruce v. Dyer,* 309 Md. 421, 426, 524 A.2d 777, 780 (1987) ("Although some states have either abolished or significantly altered the estate of tenancy by the entireties ... Maryland retains the estate in its traditional form").

Because we have so recently restated the characteristics of tenancy by the entirety, *Bruce, supra, Arbesman v. Winer,* 298 Md. 282, 468 A.2d 633 (1983), *Beall v. Beall,* 291 Md. 224, 434 A.2d 1015 (1981), as has the Court of Special Appeals, *One 1984 Toyota Truck,* 69 Md.App. at 242–244, 517 A.2d at 106–107, we need not replow that ground now. Suffice it to say that in that form of ownership, each tenant is entitled to the whole (or the entirety); neither tenant holds a separate interest; there are no divisible parts, and therefore but one owner. And, of course, the tenancy may be created in personal as well as in real property. *See,* in addition to the authorities just cited, *Diamond v. Diamond,* 298 Md. 24, 29, 467 A.2d 510, 513 (1983).

Thus, in Maryland some joint action of husband and wife ordinarily is necessary to sever a tenancy by the entirety. An attempt to alienate or convey by one spouse alone will not suffice. *Bruce,* 309 Md. at 428 & n. 2, 524 A.2d at 781 & n. 2. As *Bruce* holds, even joint execution of a separation agreement providing for sale of the property will not suffice. *Id.,* at 438, 524 A.2d at 786. Nor may property held by the entirety be taken to satisfy the individual debts of husband or wife. *Diamond,* 298 Md. at 29, 467 A.2d at 513.

Of course, there are ways in which the tenancy may be severed without consent of both parties. Absolute divorce is an obvious example. But that result occurs because an absolute divorce terminates the marital relationship upon which the tenancy depends. A limited divorce

does not have that effect. *Bruce,* 309 Md. at 428 n. 1, 524 A.2d at 781 n. 1. Forfeiture does not terminate the marriage and so does not terminate the tenancy in the manner that divorce does.

Nor does forfeiture operate like eminent domain. In the case of eminent domain, property is taken from its owners by public authority for some public purpose. *See,* Md. Const. Art. III, § 40; *Stevens v. City of Salisbury,* 240 Md. 556, 563, 214 A.2d 775, 778 (1965); and *Riden v. Phila., B. & W. R.R. Co.,* 182 Md. 336, 339–40, 35 A.2d 99, 101 (1943). Neither owner need act to bring eminent domain into play. Moreover, it is not necessarily true that a taking by eminent domain severs or terminates a tenancy by the entirety. *North Carolina State Highway Comm'n v. Myers,* 270 N.C. 258, 154 S.E.2d 87 (1967) (where entireties land taken by eminent domain, compensation paid therefor is also held by the entireties). *See, East. Shore v. Bank of Somerset,* 253 Md. 525, 253 A.2d 367 (1969); *Rue v. Haines,* 229 Md. 268, 182 A.2d 872 (1962); *Anderson v. Anderson,* 215 Md. 483, 138 A.2d 880 (1958); and *Brell v. Brell,* 143 Md. 443, 122 A. 635 (1923) (following foreclosure sale of property held by entirety, proceeds coming into hands of spouses continue to be held in that manner). But in forfeiture, some owner must do something (use a vehicle for a prohibited purpose) before the statute may be invoked. On the facts of this case, this is like one tenant's attempt to alienate or convey the property without the other's consent.

The State cites *One 1971 Chevrolet Corvette, supra,* as holding to the contrary, but it does not. It is true that the case points out that forfeiture is an *in rem* action against the vehicle, and not primarily concerned with title or ownership. 393 F.Supp. at 347. But in that case there was no "innocent owner" statute to apply. In this case we are concerned with title or ownership because the statute says we should be. A vehicle cannot be forfeited "to the extent of the interest of any [innocent] owner...." Sec.

297(a)(4)(iii). Where ownership is by the entirety, that extent is the whole interest in the vehicle, and where one tenant by the entirety is "innocent," the vehicle may not be forfeited. The institution of a forfeiture action itself does not sever the tenancy for purposes of § 297(a)(4)(iii).

Nor does the State's partition argument change this result. It relies on *Masterman v. Masterman*, 129 Md. 167, 98 A. 537 (1916), but the case is inapposite. That case dealt with how the Married Women's Property Acts affected a husband's right to deal with rents and profits for entireties property and with a husband's wrongful withholding of insurance proceeds needed to maintain the property, for the benefit of both tenants. That a court of equity might appoint a receiver to cope with this problem surely does not compel us to hold that the bringing of a forfeiture proceeding somehow "partitions" a tenancy by the entirety.

The State fares no better with its other cases involving "wrongdoing." In *In re Estate of Shields*, 224 Kan. 604, 584 P.2d 139 (1978), a wife murdered her husband, with whom she had owned property by the entirety. The court held that the tenancy had been severed; death of one tenant obviously has this effect. It went on to hold that because the wife had murdered her husband, she held a one-half interest as a tenant in common with the children. *See also Hogan v. Martin*, 52 So.2d 806 (Fla.1951). In *National City Bank of Evansville v. Bledsoe*, 237 Ind. 130, 144 N.E.2d 710 (1957), a husband murdered his wife and then shot himself. The court held that when a tenancy by the entirety is dissolved by murder, the murderer becomes a constructive trustee of the victim's estate in one-half the property. It pointed out that when a tenancy by the entirety is dissolved by operation of law (divorce), the former spouses become tenants in common, each entitled to a one-half interest. It thought it would be anomalous if the rights of a tenant who had dissolved the marriage contrary to law could rise higher than would be the case following a dissolution by operation of law. 237 Ind. at 139–140, 144 N.E.2d at 714–715.

These cases all deal with the problem of potential enrichment of a wrongdoing tenant by the entirety when the tenancy has been severed because of his or her own wrongful act. But in this case, the tenancy has not been severed, and Mrs. Kessler is guilty of no wrongdoing. The problem of the "slayer's rule" is not implicated.[8]

The State avers that our affirmance of the Court of Special Appeals will produce undesirable efforts to avoid forfeiture through use of titling conveyances by the entirety, and that this is inconsistent with the harsh application of the forfeiture law that we have noted in many cases. *See, e.g., Blue Bird Cab, Greer,* and *One 1967 Ford Mustang,* all *supra,* and *Pr. George's Co. v. One 1969 Opel,* 267 Md. 491, 298 A.2d 168 (1973). But surely we are not to assume that the legislature was unaware of the existence of tenancies by the entirety when it adopted the "innocent owner" defense. And the "harsh law" statements in the cases cited all point to a perception that the legislature intended harshness. In short, we read the law as harshly as the General Assembly writes it; the "innocent owner" defense is obviously intended to mitigate harshness. *See* nn. 4 & 6, *supra.* Since that defense was both factually and legally applicable here, we affirm the judgment of the Court of Special Appeals.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.

McAULIFFE, Judge, dissenting:

The majority holds that the Legislature must have intended to protect the property interest of a drug peddler in addition to that of his innocent spouse because it did not expressly provide for the termination of the estate of tenancy by the entirety. I respectfully disagree. The legislative history traced by the majority demonstrates that the Gener-

---

8. For Maryland law dealing generally with a wrongdoer who should not benefit by his or her own act, *see Ford v. Ford,* 307 Md. 105, 512 A.2d 389 (1986) (discusses the "slayer's rule").

al Assembly of Maryland has been strict in its use of forfeiture as a weapon in the war against drug merchants. The Legislature originally declined to include specific protections for innocent co-owners or holders of security interests, an approach entirely consistent with the common law concept that forfeiture is not an additional punishment against an individual, but an *in rem* action against the offending article. *See Director of Fin., Pr. Geo's Co. v. Cole*, 296 Md. 607, 618–19, 465 A.2d 450 (1983). Because the action is against the property, the innocence of the owner is no defense. *Id.* at 618, 465 A.2d 450; *State v. Greer*, 263 Md. 692, 694, 284 A.2d 233 (1971).

When the Legislature later decided to afford relief to an innocent owner, it did so carefully. It prohibited forfeiture entirely in the case of an innocent owner of a common carrier or vehicle for hire, and in the case of an unlawful possession of an innocent owner's conveyance. Md.Code (1957, 1982 Repl. Vol., 1987 Cum.Supp.) Art. 27, § 297(a)(4)(i) & (ii). As to all other innocent owner situations, however, it prohibited forfeiture only "to the extent of the interest" of that owner. Art. 27, § 297(a)(4)(iii). The intent of the Legislature with respect to an innocent co-owner is clear. Forfeiture of the conveyance is not prohibited, but the interest of the innocent co-owner must be protected.

I am persuaded that the statute may be interpreted to give full effect to the legislative intent, notwithstanding that the vehicle in this case was owned by the parties as tenants by the entirety. The majority points out that an entireties estate ordinarily may not be severed or terminated by the unilateral act of either spouse during coverture. That does not mean, however, that the Legislature may not provide for loss of the property or termination of the tenancy as a result of acts or omissions by one spouse, and that is precisely what the Legislature has accomplished by providing for forfeiture of property under certain circumstances.

The key point to be made here is that when an order of forfeiture is entered, the tenancy is destroyed because title

passes immediately to the appropriate governmental authority. Certainly that was the case when the innocent owner defense did not exist, and a culpable spouse could defeat the tenancy by acts that subjected the vehicle to forfeiture. It is no less the case when forfeiture continues to be permitted, but the interest of an innocent co-owner is protected.

Where there is an innocent co-owner, the vehicle should be sold and the interest of that owner protected by an appropriate distribution of the proceeds. Where there is an innocent lienholder, the sale will be accomplished by that party. Although tenants by the entirety are seised of the whole and not of equal portions, we have recognized the presumption that each owns half upon termination of the tenancy.[1] *Meyers v. Loan & Sav. Assn.*, 139 Md. 607, 614, 116 A. 453 (1922). *See also Gunter v. Gunter*, 187 Md. 228, 231, 49 A.2d 454 (1946); *Brell v. Brell*, 143 Md. 443, 450–51, 122 A. 635 (1923). The innocent co-owner is entitled to one-half the net proceeds of sale remaining after the payment of the balance of the recorded encumbrance.

The consequences of the majority holding may not be of great economic significance in this case. The motor vehicle is subject to a lien, and the interest of the culpable spouse may not be substantial. However, the principle established today is equally applicable to the seizure of a jet aircraft used for the smuggling of drugs. If such an aircraft is owned by a husband and wife as tenants by the entirety, and if the spouse of the smuggler can demonstrate his or her innocence, nothing could be forfeited—not the aircraft —not even the smuggler's interest in the aircraft.

I would reverse.

MURPHY, C.J., and RODOWSKY, J., have authorized me to say that they join in this dissenting opinion.

---

1. The presumption does not apply when property is being characterized as nonmarital or marital for the purpose of granting a monetary award. Rather, the source of the funds used to acquire the property is considered. *Grant v. Zich*, 300 Md. 256, 271–72, 477 A.2d 1163 (1984).